No. 4183

Second Circuit

---

## PIERCE v. LEONARD TRUCK LINES

---

(December 9, 1931.  Opinion and Decree.)
(January 14, 1932.  Rehearing Refused.)

---

J. Rush Wimberly, of Arcadia, attorney for plaintiff, appellant.

Ben E. Coleman, of Shreveport, attorney for defendant, appellee.

DREW, J.   Plaintiff sued for $10,325, with legal interest from judicial demand until paid, alleging that on August 5, 1929, he was traveling on horseback in a westerly direction between the villages of Jamestown and Bienville, on a public highway. That he was on the extreme right-hand side of the road.  That defendant, through its agents, officers, and employees, was operating a truck on said highway, going in an easterly direction.  That the truck was traveling at an excessive rate of speed in a reckless manner, in that it was on the left-hand side of the road, and that while being operated in a manner violative of the law, it ran into petitioner's

horse, against said horse and petitioner, killing the horse, damaging the saddle, and injuring petitioner permanently. He itemized the damage claimed as to doctor's bills, sanitarium bills, value of the horse, damage to the saddle, pain and suffering, and permanent injuries, and prayed for judgment accordingly.

Defendant in answer admits its corporate capacity, the date and place of the accident, and denies all other allegations of plaintiff's petition. Further answering, defendant alleged: That the truck was driven at a lawful rate of speed on the proper side of the road in a careful and prudent manner; that the driver of the truck saw plaintiff and his horse several hundred feet before the accident; that the horse was traveling on the extreme right-hand side of the road; and that when within fifteen or twenty feet of the place of the accident the horse shied at some object and swerved and jumped out into the middle of the road and upon the radiator, hood, and front end of the truck. That the brakes on the truck were immediately thrown on, and the truck veered to the left-hand side in an effort to avoid the accident, but that it was impossible to do so. It denied that the accident occurred through any fault of its employee, but it resulted solely through the carelessness and negligence of plaintiff in permitting his horse to wheel around and run and jump in front of the truck, and by the failure of plaintiff to give any signal for your defendant and its employee to stop the truck or slow down its speed. In the alternative, defendant pleaded contributory negligence on the part of plaintiff, as above set out.

The judgment of the lower court rejected the demands of plaintiff, from which judgment he has appealed.

The case involves only questions of fact, and this court is reluctant to disturb the finding of the lower court in such cases, and will not do so unless the judgment is clearly erroneous. The physical facts, together with the testimony of plaintiff and the truck driver, we think clearly show that the judgment of the lower court is erroneous. The following facts are clearly established by the evidence:

The accident occurred in the afternoon between the hours of one and three o'clock, on a public road in Bienville parish. Plaintiff was traveling west on horseback, and defendant's truck was going east. Plaintiff was on his extreme right side of the road, off the gravel. Defendant was up to within thirty or forty feet of plaintiff, traveling in the center of the road, which would place the left wheel of his truck on the left side of the road, and from this point the truck gradually veered to its left until it struck the horse and plaintiff. After the accident, the truck was in the ditch on its left-hand side, and plaintiff and his horse were under the truck. Defendant's truck was a new Chevrolet with a trailer, 1½ ton capacity, loaded with 5,000 pounds, and was approaching a hill, and, as stated by the driver, going as fast as possible with the load it had, in order to make the hill. The road at the scene of the accident is narrow. The only testimony as to the width of the road is given by the truck driver, who swore it was wide enough for two cars to pass, but not wide enough for three cars to pass abreast. The road at this point therefore could not have been more than fifteen or sixteen feet wide. Plaintiff testified that,

when he saw the on-coming truck, he stopped his horse on the extreme right shoulder of the road, expecting the truck to pass. The truck driver and his fourteen year old companion testified: That they were driving on their right side of the road, and when within ten feet or less of the scene of the accident the horse shied and jumped in front of the truck; that the truck was turned sharply to the left in an attempt to avoid the accident; that the horse and plaintiff were hit about the center of the road.

The physical facts refute the testimony of the truck driver and his companion. The tracks of the truck clearly show that it was not traveling on its right-hand side but in the center of the road, with its left wheels to the left of the road, and that it was not cut sharply to the left, but gradually turned to the left, beginning thirty or forty feet before it struck the horse. The truck driver and his companion testified that they were traveling from twenty to thirty miles per hour. Plaintiff and one other witness, who had been passed by the truck about 150 yards back, testified that it was traveling very fast; one of them fixing the speed at fifty miles per hour. The truck driver admitted after the accident that he was getting up all the speed possible in order to make a hill he was approaching.

The lower court found that the truck was traveling twenty-five or thirty miles per hour. It was certainly not traveling any less than that, and we are convinced that it was making even greater speed.

Just at the moment of the accident, the horse attempted to jump a ditch on its right, but was reined in by plaintiff. The horse undoubtedly saw that it was going to be struck by the on-coming truck and attempted to jump out of the way. The plaintiff, in reining the horse in, no doubt turned him, but certainly he was never on the truck's right-hand side of the road, for when he was struck by the truck, according to defendant's evidence, it was about the middle of the road, and, had the truck been on its proper side of the road, the accident would never have happened. The truck driver testified that the horse was on the extreme right side of the road and the truck on its extreme right, and that within ten feet or less of passing the horse, it shied and jumped across the road in front of the truck and was struck by the right part of the front bumper of the truck. This feat on the part of the horse is not only improbable, but impossible. Assuming the road to have been only sixteen feet wide, it would have been necessary for the horse to travel at least ten feet, if not more, while the truck was traveling less than ten feet. This could not be, even though we accept the speed of the truck as fixed by the driver at twenty-five miles per hour.

The facts clearly show that the truck was in the center or to the left of the center of the road; therefore, due to the narrowness of the road, dangerously close to the horse, at least, close enough to cause the horse to become frightened and fear for its safety. The horse may have shied and turned around; if so, it was due to the negligence of the driver of the truck in traveling on the wrong side or center of the road, when he should have been on the right. It may not be negligence to travel in the center of the road when no one is passing, but when approaching one who has a right on the road, it is the duty of both to keep to the right side of the road. If the truck had been on its

right side of the road, where it is required by law to travel, the accident would never have happened, and the negligence of the truck driver in driving on the left side of the road, after seeing the plaintiff and the horse (which he testified he saw for more than 100 yards before the accident), was the proximate cause of the accident.

Furthermore, if the truck driver had turned to his right, instead of his left, just before the accident, it would never have happened. The rule as to the acts of one in an emergency does not apply when the emergency is created by the negligence of the one urging the rule. Plaintiff did all that was within his power to avoid the accident. He pulled his horse to the right of the road as far as was possible, due to a ditch on that side, and there was plenty of room for defendant's truck to pass. Defendant has given no reasonable, or sound, legal excuse for the truck running into plaintiff.

The most reasonable conclusion at which to arrive, from all the physical facts in the case, is that the driver was not paying any attention to where he was going and was not keeping the proper lookout. When he discovered the horse in front of him, it was too late to avoid the accident. Defendant under the testimony, is clearly liable.

The horse was killed by the accident and his value was shown to be $100; the saddle was damaged to the extent of $25; the medical and hospital bills of plaintiff are shown to have been $200; making a total of $325. For these items, plaintiff is entitled to judgment. Both bones of plaintiff's right leg were broken near the ankle, and the bones badly shattered. He spent eighteen days in the sanitarium, and afterwards was under the care of a physician at Ringgold, La. He could not walk without a crutch for a year, and, at the time of trial, was still forced to use a stick. Dr. Fletcher, who has treated him since the accident, testified that he will never be able to do a day's work on the farm, as he did before the injury, and that his injury, due to the shattering of the bones, is permanent. It is shown that he suffered intense pain and was suffering all the time, even up to the day of the trial. He also received lacerations and bruises on his head, brush burns on his back, and lacerations of the forearm. Plaintiff is a well-to-do negro farmer; owns his place of 200 acres. It is not shown that he did a great deal of work himself on the farm; only filled in when one of his boys was absent. He has made almost the same amount of crop since the accident that he did before, although he was not able to do any work at all and had to depend upon his boys. He is sixty years of age, and it is conclusively shown that he will never be able to do any work to amount to anything on the farm again.

In fixing the amount of an award in a case of this kind, it is more or less difficult, and every case is different from the others. There is no true precedent to follow. However, in this case for plaintiff's pain, suffering and disability, we feel that an award of $3,000 will do full justice to all.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed, and that there now be judgment in favor of the plaintiff and against the defendant in the full sum of $3,325 with legal interest from judicial demand until paid, and for all cost of court.