140 So.2d 662 (1962)
Elton L. WISE, Plaintiff-Appellee,
v.
AGRICULTURAL INSURANCE COMPANY, Defendant-Appellant.
No. 9701.
Court of Appeal of Louisiana, Second Circuit.
April 4, 1962.
Rehearing Denied May 9, 1962.
Certiorari Denied June 15, 1962.
*663 Cook, Clark, Egan, Yancey & King, Shreveport, for appellant.
Giddens & Hall, Shreveport, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
This is an action in tort. As a guest passenger, as was the plaintiff in Modisette v. Agricultural Insurance Company, of this court, 140 So.2d 667, with which the instant case was consolidated for the purpose of trial, plaintiff instituted this action against his host's insurer to recover damages for personal injuries sustained in a motor vehicle collision occurring June 1, 1959.
Directly involved were a 1956 Buick automobile of one William B. Roseberry, Jr., with whom Plaintiff, Wise, and W. R. Modisette were riding, as guest passengers, and a 1952 model Dodge, stake body, truck owned by and driven at the time by William H. Brown. Indirectly involved was a station wagon of one L. E. Tate.
The accident occurred in the southwest quadrant of the intersection of the aforesaid road and highway about two miles north of Minden. The highway, asphaltsurfaced, of a width of 20 feet, and with the usual shoulders, runs in a general north and south course and is straight for at least 500 feet on either side of the intersecting road. This road forms a "T" intersection at the crest of a hill and leads off in a westerly direction.
The facts as to the actual occurrence of the accident, about which there is apparently no dispute, may be briefly reviewed. Roseberry, accompanied by his two friends as aforesaid, was proceeding south on the highway at a speed of approximately 55 miles per hour en route to Minden. Brown, traveling north on the same highway, with the intention of making a left turn into the side road at the top of the hill, was proceeding at a rate estimated at 10 to 20 miles per hour. Roseberry, nevertheless, saw the truck when his own car was at a distance of some 400 to 500 feet from the intersection. When about 300 feet from the intersection Roseberry saw the truck angling to its left in a left hand turn movement. Whereupon, without reducing his speed or applying his brakes, he continued, steered his vehicle to the left with the intention of passing to the left of the truck. When astride the center line of the highway, Roseberry saw an oncoming station wagon, almost 100 feet to the rear of the truck, ascending the hill on its right hand side of the road. Roseberry then, again without applying his brakes or reducing his speed, turned his car back to his right hand lane and eventually struck the truck broadside. The front of the truck had at the time of the impact already reached and entered the *664 intersecting road. By the force of the impact the truck was spun around and knocked into the west roadside ditch and came to rest facing in an easterly direction. The Roseberry Buick continued 78 feet from the point of the collision and came to rest facing in a southeasterly direction partially on the right hand shoulder. Both vehicles were damaged beyond repair and were considered total losses.
Negligence charged to Roseberry consisted of his failure to maintain a proper lookout or to keep his car under control, as well as his failure to reduce his speed, or stop, or to take reasonable precautions to avoid the accident, and in driving, under the prevailing circumstances, at an excessive rate of speed.
Defendant denied its assured was guilty of negligence in any respect and asserted that the negligence of Brown in failing to maintain a proper lookout, in making a left turn without first having ascertained that the movement could be made in safety, in failing to yield the right-of-way to the Roseberry vehicle, and in operating his truck in disregard of the lawful rights of others using the highway, constituted the sole and proximate cause of the accident. Defendant further contended that Roseberry was confronted with a sudden emergency, not of his making or choosing, and hence, if it could be said he did not make the wisest choice in his effort to avoid the accident, he is not, on that account, to be censored or held liable for his failure in that respect.
The trial court concluded, notwithstanding Brown's negligence in attempting a left turn under the aforesaid circumstances, that Roseberry was also guilty of negligence in failing to apply his brakes or to reduce his speed, and in attempting to pass to the left of the truck. Such negligence was found to constitute an immediate and proximate cause of the accident. Judgment was accordingly rendered in plaintiff's favor and the defendant has appealed.
From our review of the record, we are of the opinion that, as to the question of liability, the learned trial judge properly appraised the facts and applied the law thereto. The Brown truck was visible to Roseberry for at least a distance of 500 feet before he reached the intersection. Brown began his left turn approximately 75 feet from the intersection. When this movement was begun, Roseberry was at least 300 feet from the intersection.
The events transpiring immediately prior to the accident tend to establish the correctness of the aforeaid conclusion. There was, of course, a reaction time following Roseberry's observation of the Brown truck in the act of making a left turn, after which reaction time, Roseberry began a left turn of his own to the left side of the road, whereupon he observed the approach of the station wagon. This observation was again followed by a reaction time and a decision on Roseberry's part to steer his car to the right. At this time the car was, at least, 160 feet, and possibly 200 feet, from the intersection. Therefore, Roseberry had ample time, distance and opportunity to take evasive action to avoid the accident, such as applying his brakes, reducing his speed, and maintaining control of his car. Such would have been the actions of a reasonably prudent operator. Instead, Roseberry maintained his rate of speed and elected to pass to the left of the truck, notwithstanding such a determination required him to occupy the left hand traffic lane in traversing the top of a hill.
There can be no denial of the fact that Roseberry, immediately before the impact of the collision, was confronted with an emergency. This emergency, however, was not created solely by the driver of the truck, but by the actions of Roseberry himself. When Roseberry first saw the truck in the act of making a left turn, there was no emergency. He was several hundred feet away; he knew the hill was there, and that obviously he could not, or did not see traffic approaching from over the hill. He knew, *665 too, that in an attempt to make such a passing maneuver he would be taking a chance and assuming a risk of a head-on collision. This was only avoided by Roseberry, after belatedly observing the approach of a station wagon, in swerving his car back to the right. The result was that the car struck the truck as it was about to complete its left hand turn into the side road.
The conclusion is inescapable that Roseberry was not keeping or maintaining a proper lookout, and that he obviously attempted to pass to the left of the truck on his left hand side of the highway and on the crest of a hill without ascertaining that such passing movement could be made in safety and without endangering approaching traffic rightfully in that lane of travel. The conclusion is, therefore, inescapable that Roseberry failed to act as a reasonable and prudent driver under the circumstances.
Appellant cites and relies upon the following authorities: Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127; Wiley v. Sutphin, La.App., 108 So.2d 256; Thibodeaux v. Gore, La.App., 124 So.2d 336, in support of its contention that a motorist, when confronted with a sudden emergency, is not to be held to the same cool and deliberate judgment as one not so confronted, and that if such emergency requires the exercise of a choice of methods in order to avoid an accident, he is not to be held for failure to make the best choice. We are in complete accord with the pronouncements contained in these cases. The test is whether he acted as a reasonable and prudent man under the circumstances then prevailing. We are, however, of the opinion that defendant's assured was not confronted with a sudden emergency when a reasonably prudent man would have, and should have, realized the danger of passing to the left of the truck, when such movement would require such passage to be made in the left traffic lane on top of a hill. While oblivious to the danger of such action, the emergency developed through the assured's unabated speed. The authorities cited are, therefore, in our opinion, without application to the facts of this case.
Before concluding our discussion of the question of liability, we feel we should make some reference to defendant's attack upon the credibility of Wise and Modisette as witnesses. The bases of this attack are statements signed by them June 4, 1959, which are at variance with their sworn testimony given in court. These parties were interviewed by defendant's adjuster while they were confined to a hospital to which they had been carried immediately following the accident. This interview was had not only without the doctor's knowledge or consent but against his orders. Both Wise and Modisette had been severely and painfully injured, and, at the time the adjuster prepared the statements, were under heavy sedation for relief of pain. The doctor testified neither Wise nor Modisette was in a position to make statements as to the occurrence of the accident. Under these facts, not much credence could be placed in these statements, particularly in view of the fact that the manner of the occurrence of the accident is otherwise amply established.
No basis is shown justifying or warranting a modification of the judgment as to the quantum of the award. Plaintiff sustained a dislocated hip with a fracture of the acetablum, which later required an operation or open reduction for replacement of the joint in proper position. Plaintiff also sustained lacerations across the face and legs, fractures of ribs, and suffered severe and excruciating pain. He was hospitalized for a period of two months, and was not able to return to work for seven months; medical expenses of $2,983.43 were incurred, and plaintiff sustained a loss of wages in the sum of $2,518.28. The remainder of defendant's $10,000.00 policy limitation of liability of $4,498.29 is inadequate to compensate plaintiff for the injuries sustained and the suffering endured.
Finally for consideration is a question of the allowance of a credit to the insurer *666 of $2,000.00, which it had expended in plaintiff's behalf for medical expenses. In this regard it may be noted that defendant's contractual obligation was limited to $10,000.00 to any one person in any one accident. The policy, however, provides for the payment of medical expenses to the amount of $2,000.00 to or for the named insured or to or for any other person who sustains bodily injury, caused by accident, while occupying the insured automobile, and while it was being used by the insured or by another through his permission.
For recovery of the medical expenses over and above the limitation of liability prescribed by the policy, plaintiff relies upon the pronouncements of the following cases: Distefano v. Delta Fire & Casualty Co., La.App., 98 So.2d 310, 311; Warren v. Fidelity Mutual Insurance Co., La.App., 99 So.2d 382; Bordelon v. Great American Indemnity Co., et al., La.App., 124 So.2d 634. The pronouncements of these cases, as well as the pronouncement in Bowers v. Hardware Mutual Casualty Company et al., La.App., 119 So.2d 671, are no longer controlling. In a recent case, Gunter et al. v. Lord et al., La., 140 So.2d 11, the docket of the Supreme Court, it was held that collection could not be made twice for medical expenses from an insurerfirst, under the provisions relating to the payment of medical expenses, and then under the general liability features of the policy. In discussing policy provisions similar to those contained in the policy herein sued on, the Supreme Court stated:
"The result follows, when the instrument is viewed as a whole and the intention of the parties gathered from all its parts, that it was not contemplated that an injured person should collect his medical expenses twice, i. e., that having already been paid such expenses at the instance of the insured by the insurance company following the accident, that he should be again awarded the same medical expenses as an incident of the tort action. His damages, in that respect, have been repaired. We think the parties to the contract clearly intended coverage C to provide medical payments in all cases, up to the stated limit, but, in the event of tortious conduct on the part of the insured, that such payments would satisfy the claim for damages normally awarded for those expenditures.
"This is not to say, of course, that were the injured party wholly or partly indemnified for hospital or medical care by insurance effected and paid for by him or through some other source, and toward which the wrongdoer did not contribute, that the latter would benefit therefrom by a reduction of his damages in a suit by the injured party. Warren v. Fidelity Mutual Insurance Co. (La.Appeal), 99 So.2d 382; see 15 Am.Jur. 617, Damages, Sec. 201, and pocket part; and 13 A.L.R.2d 355."
We, therefore, conclude that the quantum of damages allowable under the general liability provision includes medical and hospital expenses paid or payable under the medical expense provisions of the policy, and that, accordingly, an insurer may not be condemned for a double or duplicated payment of medical expenses.
Plaintiff, however, objected to the aforesaid allowance of credit for medical expenses previously paid as being beyond the scope of the pleadings. The objection, highly technical in character, is, in our opinion, without merit. Plaintiff's claim included specific items of medical expenses, to which plaintiff's entitlement to recover were placed at issue by defendant's answer.
Therefore, for the reasons assigned, the judgment appealed is amended by allowing a credit of $2,000.00 for medical expenses previously paid, and, as thus amended, is affirmed.
*667 Plaintiff-appellee is assessed with the cost of this appeal. All other cost is taxed against the defendant.
Amended and affirmed
Rehearing denied; GLADNEY, J., dissents.