228 So.2d 530 (1969)
Julius W. ASHFORD, Jr.
v.
LeRoy RICHARDS and State Farm Mutual Automobile Insurance Company.
No. 7834.
Court of Appeal of Louisiana, First Circuit.
December 22, 1969.
*531 Dennis R. Whalen, Baton Rouge, for appellant.
Robert W. Smith, of Seale, Smith, Baine, & Phelps; and Joseph F. Keogh, of Keogh & Krousel, Baton Rouge, for appellees.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Plaintiff-appellant, a guest passenger in an automobile being driven by John B. Engels, appeals rejection of his claims for damages sustained in an accident wherein his host's vehicle was struck by an oncoming automobile being operated by defendant LeRoy Richards, the alleged insured of defendant State Farm Mutual Automobile Insurance Company (State Farm). The trial court found the sole cause of the accident was an emergency created by the negligence of a third (and unknown motorist) who did not stop at the scene. We find no error in the judgment rendered below and affirm the decision of the trial court.
Appellant maintains the trial court erred in finding Richards free of negligence contributing to the accident. Alternatively, appellant urges that the lower court erred in applying the sudden emergency doctrine without also finding Richards' negligence contributed to the emergency and therefore renders him liable in damages.
The answer of defendant Richards sets up a third party demand against Max Adcock, d/b/a Adcock Insurance Agency, and St. Paul Insurance Company, Adcock's Errors and Omissions Insurer. This demand is for damages for attorney's fees incurred by Richards as the result of Adcock's alleged failure to effectuate liability insurance on Richards' automobile. Additionally, Richards prayed for judgment against these third party defendants in any amount rendered against him in favor of plaintiff.
The accident happened at approximately 10:20 P.M., March 19, 1965, in open country on Louisiana Highway 19, a paved, two-lane, north-south roadway. The road was dry and the weather clear. Engels was traveling northerly in his proper lane of travel at a speed of approximately 40 miles per hour. Appellant occupied the right side of the front seat of the Engels vehicle. Richards was traveling southerly in his correct lane, at a speed of 40 to 45 miles per hour. Both vehicles had their head lights burning. As the cars were thus meeting, a third vehicle, traveling southerly behind Richards, pulled into the left or northbound lane and commenced passing Richards' automobile. Engels, realizing his path was blocked and a headon collision was imminent, applied his brakes and swerved to the right. In some manner the passing motorist managed to regain the proper southbound lane without colliding with either the Richards or the Engels automobiles. Defendant Richards applied his brakes. His car skidded out of control into the northbound lane and struck the Engels vehicle. The impact involved the left side of each automobile.
The accident was investigated by Arthur LeBlanc, Jr., State Trooper, who arrived on the scene before either vehicle was moved from its position following the accident. The trooper found 21 feet of skid marks laid down by the Richards vehicle in the southbound lane of travel. He found no skid marks made by either the Engels car or that of the unknown motorist. According to LeBlanc, the Engels car was in the ditch on the east side *532 of the highway. LeBlanc also testified Engels told him he (Engels) saw "that there was going to be trouble or that there was trouble in the highway" when the unknown motorist pulled into the passing lane. Based on physical evidence, LeBlanc's unequivocal testimony is that the impact took place in the northbound lane and that at the time of impact, no part of the Engels car was off the paved surface of the road. In addition LeBlanc testified Engels told him that immediately following the impact Engels thought his vehicle had been hit by the passing automobile and not Richards' vehicle. LeBlanc also testified Richards told him the passing vehicle almost caught Richards' front bumper when it swerved back into the southbound lane and almost immediately thereafter came to a stop. He further related that Richards told him that Richards also first thought he had collided with the passing motorist and not the oncoming Engels car.
In essence Mr. John Engels testified he was proceeding northerly in his proper lane of travel at an estimated speed of 40 miles per hour. He noted the approach of several southbound automobiles. Suddenly a vehicle, apparently traveling at an excessive rate of speed, began passing the nearest southbound automobile thus blocking his lane of travel. Engels immediately applied his brakes and pulled over onto the right shoulder. In some manner the unidentified vehicle passed without striking his car but the next thing Engels noticed was another car coming toward him. The unidentified motorist did not stop at the scene. He denied telling Trooper LeBlanc that he first thought his car was struck by that of the unknown motorist. Engels conceded the entire incident occurred very quickly and that it was a "close call" that he did not collide head-on with the unidentified vehicle.
Plaintiff's testimony is substantially the same as that of Mr. Engels. He stated his host was meeting several oncoming vehicles. Plaintiff observed one of the oncoming cars pull into the northbound lane whereupon Engels applied his brakes and veered to the right. He also stated the unknown vehicle came "real close" and when it passed, he noted it had two red tail lights burning brightly. Plaintiff further testified that after the unknown vehicle passed, he saw the lights of the Richards vehicle coming toward them. According to plaintiff, the Engels car was about three-fourths off the highway and on the right shoulder of the road when it was struck. He also testified the entire incident occurred in a very short period of time.
Defendant Richards testified he was proceeding southerly at about 40-45 miles per hour in his proper lane. He was aware of an overtaking vehicle proceeding at what he considered an excessive rate of speed. He explained that about a mile farther back the overtaking vehicle had entered the highway from a roadside tavern and followed him for about that distance. Richards also stated he was not aware of the oncoming Engels car. According to Richards, when the unidentified motorist began to pass, he reduced his speed by removing his foot from his accelerator. Richards also stated the unnamed driver then cut very sharply to his right into the southbound lane immediately ahead of Richards' car and instantly applied his brakes. In addition, Richards testified that when the passing motorist applied his brakes, Richards saw the rear end of the car rise. Richards stated he immediately applied his own brakes and his car went into a slide. Richards also stated he then braced himself for the impact and recalled nothing else until he got out of his car after it came to rest.
Appellant urges the trial court erred in failing to hold Richards guilty of negligence constituting a proximate cause of the accident in: (1) failing to maintain a proper lookout; (2) failing to timely observe the emergency, and (3) unreasonable reaction to the exigency of the situation by failing to either timely apply *533 his brakes or veer onto the right or west shoulder of the highway. Alternatively, appellant contends the emergency was itself created by Richards' untimely and unreasonable reaction to the conduct of the unidentified driver and is thus denied the benefit of the sudden emergency rule.
It is settled law that a motorist confronted with a sudden emergency not of his own creation is not held to the same accuracy of judgment or degree of care as in ordinary circumstances. He is not necessarily negligent in making a mistake of judgment or failing to exercise the best or wisest course for avoiding an accident or injury. Neither is he liable for injury if he exercises such care as is reasonably to be expected of an ordinarily prudent individual under similar facts and circumstances. Smith v. Marquette Casualty Company, 247 La. 1054, 176 So.2d 133.
Nevertheless, the sudden emergency doctrine is available only to a person who is himself proceeding carefully and prudently on the occasion of the sudden emergency and who does not by his own actions contribute to its creation. Smith v. Marquette Casualty Company, above.
We find that an emergency was created in this instance by the unidentified motorist's imprudent attempt to pass the Richards vehicle in the face of Engel's oncoming automobile.
We find no merit in appellant's argument that the emergency did not occur suddenly but developed gradually because Richards observed the erratic maneuvering of the unidentified vehicle when it first entered the highway behind Richard's automobile. We recall Richards' testimony that the vehicle followed him for about a mile and then suddenly swerved into the northbound lane to pass. We likewise note the testimony of Engels and Richards to the effect the situation developed very rapidly and not slowly and perceptibly as contended by appellant.
Counsel for appellant maintains Richards reacted imprudently and unwisely by not either sooner applying his brakes or veering to the shoulder of the road thus clearing the southbound lane for the passing vehicle. Under the circumstances we find that Richards did indeed reduce the speed of his vehicle when it became evident the unidentified vehicle would attempt to pass. It is clear that the combined action of Engels in slowing his speed and pulling to the right and Richards slowing the speed of his car afforded the passing car an escape route which avoided a head-on collision with the Engels car.
Viewed in the light of established physical facts, the testimony of the witnesses leaves some doubt as to the movements of the unidentified vehicle after it passed the Richards car. It appears certain the unnamed motorist did not stop in the southbound lane ahead of Richards. Had he done so, it is most improbable this third vehicle would not have been struck in the rear by Richards' automobile. Neither did the undesignated driver apply his brakes with sufficient force to leave skid marks on the highway. Nevertheless, Richards' testimony is to the effect he observed the brake lights of the unidentified car come on and noted the rear of that vehicle rise as if the brakes were being applied immediately after the driver veered back into the southbound lane. Moreover, plaintiff testified that it had two tail lights burning brightly. We can only surmise, therefore, that for some unknown reason, the driver of the unidentified car applied his brakes to some extent thus causing his brake lights to come on. This would have induced Richards to reasonably believe he was going to stop on the highway. It could also account for plaintiff seeing two "bright" tail lights. Regardless of what actually occurred, the trial court's oral reasons for judgment expressly find that even if the passing car did not attempt to stop after passing Richards, nevertheless Richards acted reasonably in applying his brakes when the passing motorist's vehicle cut suddenly to its right across his path *534 of travel. The trial court also found that the passing automobile executed its maneuver very quickly and that a head-on collision between the vehicle and Engel's car was averted only by "the split second timing of the entire sequence of events."
It is fundamental law that plaintiff must establish his case by a clear preponderance of evidence. Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395.
The trial court found that defendant breached no duty of care under the circumstances. Factual findings of a trial court are entitled to great weight and should be confirmed in the absence of a showing of manifest error. Rudolph Ramelli, Inc. v. City of New Orleans, 233 La. 291, 96 So.2d 572.
We find no error in the conclusions reached below.
The conclusions herein reached obviate the necessity of passing upon the third party demand of defendant Richards.
The judgment of the trial court is affirmed at appellant's cost.
Affirmed.