498 So.2d 140 (1986)
James H. GRAVOIS
v.
SUCCESSION OF Michael Joseph TRAUTH, United Services Automobile Association and Armed Forces Cooperative Insuring Association.
No. 86-CA-294.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1986.
Writ Denied January 23, 1987.
*141 Pat M. Franz, Metairie, for James H. Gravois, plaintiff-appellant.
Schafer & Schafer, Timothy G. Schafer, Matthew B. Collins, Jr., New Orleans, for United Services Automobile Ass'n., defendant-appellee.
Before CHEHARDY, KLIEBERT and GRISBAUM, JJ.
CHEHARDY, Chief Judge.
This appeal arises from a jury verdict finding plaintiff, James H. Gravois, 40% at fault and defendant Michael Joseph Trauth 60% at fault for injuries plaintiff sustained in an automobile accident. Gravois was a guest passenger in a small sports car driven by defendant at the time of the collision. Trauth was killed in the accident and was uninsured. Suit was filed against his succession; United Services Automobile Association, the uninsured motorist carrier of plaintiff's father; and Armed Forces Cooperative Insuring Association, umbrella liability insurer of plaintiff's father. The jury awarded plaintiff $20,000 in special damages and $35,000 in general damages.
On appeal plaintiff raises two issues. First, plaintiff asserts the jury erred in finding that he was 40% at fault. Secondly, plaintiff urges this court to increase the amount of damages.
The evidence at trial showed that the 19-year-old plaintiff and the defendant were intending to go to a movie on the evening the accident occurred. Prior to going, the parties stopped at a Steak and Ale restaurant and bar located near the theatre. Sometime thereafter, defendant's car was seen speeding west on Behrman Highway in Jefferson Parish toward the intersection of Behrman and Holmes Boulevard. Before reaching the intersection of Behrman Highway and Holmes Boulevard, the speeding car crossed a bridge and then moved into a universal turn lane to avoid hitting two trucks which were occupying each traveling lane of the highway. The vehicle continued to travel in the turn lane, went through the intersection without stopping, and collided head-on with a pickup truck stopped for a left turn at the intersection.
Plaintiff was transported to Jo Ellen Smith Hospital for treatment of multiple injuries. He spent eight days in the hospital, two of which were in intensive care. At the hospital, he was diagnosed as having sustained a cervical concussion resulting in partial amnesia, multiple fractures of his jaw, a fracture of the navicular bone of his right foot (arch), and fracture of his left large toe. In addition, plaintiff required stitches for a 10-inch jigsaw laceration across his forehead and lacerations to his nose and leg. After discharge from the hospital, plaintiff obtained psychological *142 therapy for the emotional distress resulting from the trauma of the accident.
On appeal, plaintiff asserts that the jury erred in finding plaintiff 40% at fault. He argues that no evidence was presented to show that he knew of some hazard unknown to Trauth or that he had actual or constructive knowledge that Trauth was unfit to drive. Smith v. Marquette Casualty Co., 247 La. 1054, 176 So.2d 133 (1965); Sutton v. Langley, 330 So.2d 321 (La.App. 2d Cir.1976); Richards v. American Home Assurance Company, 241 So.2d 77 (La.App. 3d Cir.1970).
As pointed out by plaintiff, the leading case involving guest passengers injured through the negligence of an intoxicated driver is Prestenbach v. Sentry Insurance Co., 340 So.2d 1331 (La.1976). Prestenbach requires defendant to prove that plaintiff knew or should have known of the risk involved. As pointed out by plaintiff, however, the holding is couched in terms of assumption of the risk, and the jury herein found that plaintiff did not assume the risk. Neither Prestenbach nor its progeny refers directly to the alternative defense of contributory/comparative negligence and its applicability in the event plaintiff is found not to have assumed the risk of injury. See Holmes v. State through Dept. of Highways, 466 So.2d 811 (La.App. 3d Cir.1985); Case v. Arrow Trucking Co., 372 So.2d 670 (La.App. 1st Cir.1979).
As the Prestenbach court stated, assumption of risk requires a showing that the plaintiff knowingly and voluntarily assumed the risk of his injury. For purposes of assumption of the risk, "[k]nowledge is the mainstay of assumption of the risk defense and the court will impute knowledge to a plaintiff not because he was in a position to make certain observations, but only when plaintiff actually made those observations and should reasonably have known that a risk was involved. * * *" Bourgeois v. Jones, 481 So.2d 145, 151 (La.App. 5th Cir.1985). On the other hand contributory negligence is conduct on the plaintiff's part falling below the standard to which he should conform for his own protection, i.e. a reasonable man under like circumstances. Dorry v. Lafleur, 399 So.2d 559 (La.1981); Bourgeois v. Jones, supra.
Assumption of the risk and contributory/comparative negligence are well-established affirmative defenses to other automobile torts. Although we perceive a "gap" in the jurisprudence insofar as intoxicated drivers and their guest passengers are concerned, we think Prestenbach is reconcilable with the general automobile tort law. Were we to decide otherwise on the basis of the Prestenbach language, we would essentially be imposing a greater burden on defendants to extricate themselves from full or partial liability in cases of this kind than in other automobile accident cases. Thus, despite the seemingly restrictive holding in Prestenbach, we find that comparative negligence is applicable, with the test being whether plaintiff acted as a reasonable man in riding with an intoxicated driver.
Plaintiff asserts that a party who suffers from amnesia as a result of injuries received in an accident, and who is unable to recall the details at or before the accident, is presumed to have exercised due care where there are no other eyewitnesses. Lowenburg v. Labor Pool of America, Inc., 296 So.2d 846 (La.App. 4th Cir.1974). Plaintiff also asserts that evidence fails to show that he failed in his duty as a guest passenger to warn defendant of a hazard within his knowledge, but unknown to the driver. Smith v. Marquette Casualty Co., supra; Sutton v. Langley, supra; Richards v. American Home Assurance Company, supra.
The evidence herein reveals that plaintiff suffered amnesia due to the cerebral concussion he sustained in the accident. He testified that he was unable to recall any details from the time he entered the Steak and Ale at approximately 5 p.m. until he awoke in the hospital two or three days later. Although he was unable to remember whether or not Trauth showed visible signs of intoxication, he stated that he normally would not ride with someone not in *143 control. At the time of the accident plaintiff had a learner's driving permit, but lacked driving experience. He admitted, however, that he and Trauth intended to have a few drinks at the Steak and Ale while waiting for the movie to start.
Two witnesses in separate cars testified to the defendant's conduct prior to the accident. Allen Yeoman and Kenneth Mouton stated that they were traveling west on Behrman Highway when they saw the Trauth vehicle approaching from the rear, traveling in excess of 45 miles per hour. Yeoman was driving a motorcycle in the left lane and was directly in front of defendant. Mouton was in the left lane. Both testified that defendant changed lanes twice in order to pass each of their vehicles, but stated that the driver appeared to be in control. After passing them and prior to reaching the bridge on Behrman Highway, the witnesses stated the Trauth car suddenly entered the middle lane which is not a travel lane, but is a designated universal turn lane. Mouton testified that the defendant entered the center lane in an effort to avoid two large trucks occupying each of the travel lanes. He stated he did not see the defendant's brake lights and that the car was traveling so fast that when it reached the bridge the sports car was lifted from the ground completely. Mouton stated that defendant continued in the middle lane, crossed the intersection of Behrman Highway and Holmes Boulevard and collided head-on with a pickup truck waiting to make a left turn on the eastward portion of the roadway. At no time did Mouton see defendant apply his brakes prior to the collision.
Following the accident, a blood alcohol test was performed on defendant as part of his autopsy. The autopsy and test were done by the Orleans Parish Coronor's office and the defendant's blood alcohol level was determined to be .17%. Dr. Paul McGary, who performed the autopsy, testified the level of alcohol in defendant's blood was high. He stated that with a .17% alcohol level defendant's driving would have been dangerously impaired and that Trauth would have been exhibiting visible signs of intoxication. Dr. Monroe Samuels, chief consulant pathologist for the Coronor's office, affirmed Dr. McGary's findings. He qualified Dr. McGary's conclusions to some extent by stating that individuals show variable signs of intoxication at different levels of alcohol consumption. He testified, however, that an average man of defendant's weight and height would have consumed six to eight 8-ounce alcoholic drinks in order to reach the .17% level. He agreed with Dr. McGary that it was more likely than not that the defendant showed visible signs of intoxication.
Appellate review of facts is restricted to determination of whether the factual findings of the trial court are manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). The evidence in this case is fairly clear that defendant was intoxicated to the extent his driving skills were impaired. The evidence also shows that defendant would more likely than not have been exhibiting signs of intoxication based on his blood alcohol level. In addition, defendant was driving his vehicle in an unsafe manner. While we recognize that plaintiff, as an amnesiac, is entitled to the presumption that he exercised due care in riding with defendant, the evidence rebuts the presumption by a preponderance. Consequently, we find the jury was not clearly wrong in finding defendant 40% at fault in causing the injuries he sustained.
Plaintiff also complains that the damages awarded by the jury were inadequate. He argues that the general damage award of $35,000 is so low as to constitute an abuse of discretion considering his multiple injuries, residual disability, permanent scarring, and uncomfortable and painful treatment. Plaintiff also alleges that the award of special damages were erroneous in that the jury failed to award plaintiff the total amount of his lost wages.
The evidence shows that plaintiff suffered a cerebral concussion resulting in permanent partial amnesia. He fractured *144 his jaw in five places, and fractured his left toe and right foot. He received a 10-inch laceration to his forehead, a small laceration on his nose and a laceration on his leg. He further underwent seven months of psychological therapy.
Because of his physical injuries plaintiff spent eight days in the hospital, two of those days he was in intensive care. After leaving the hospital, he was bedridden for approximately two weeks. Plaintiff spent one month on crutches, required plastic surgery for the lacerations, had his mouth wired shut for one month due to his jaw fracture, underwent three root canals, and spent three and a half years in braces, also due to his jaw injury. The physicians who treated plaintiff stated he has a 25% functional loss of his right foot and that he requires a special foot mold for his shoes when engaging in stressful activities such as running, jumping and climbing. He further lost 50% of the normal motion of his left toe at the joint near the nail. Although he suffered some arthritic changes in his foot, the testimony indicates the changes have stabilized. The scars on plaintiff's face reached optimum appearance after one year.
Plaintiff also claimed damages for psychological injury for which he asserts he received treatment from Theresa Adams, a psychiatric social worker, for seven months. However, the evidence shows that he attended therapy sessions with Ms. Adams prior to entering the Navy in 1981. The accident occurred four days after he was discharged and returned home. He served nine months in the Navy, but was honorably discharged for psychiatric reasons. Although Ms. Adams and plaintiff asserted that most of the therapy after the accident was related to the trauma, they admitted that some part of the therapy included problems involving his psychiatric discharge and his pre-Navy difficulties.
Damage awards are not subject to modification by the appellate court absent a finding that the fact-finder abused its discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). The jury awarded plaintiff $35,000 in general damages. While we find that the award for plaintiff's injuries are not generous, we cannot say the award is so low as to be an abuse of discretion.
In regard to the special damages, the jury awarded plaintiff $20,000. Our calculations show that the award is $379.09 less than plaintiff requested. Plaintiff presumes the award failed to consider plaintiff's total lost wages for 16 weeks at minimum wage.
Prior to entering the Navy in 1981, plaintiff was employed in various minimum-wage jobs appropriate for a 17-year-old. At the time of the accident he was 19, had served in the Navy for nine months and was not working. Following the accident, he was unable to work for approximately three to four months.
While we cannot state with certainty the reason the jury reduced the special damages by $379.09, we find it just as likely that they considered the fact that plaintiff's psychological therapy was not totally related to the accident and adjusted the medical figures accordingly. Considering the evidence in either case, we consequently find that the jury did not abuse its discretion in awarding the special damages.
Accordingly, the judgment of the trial court is hereby affirmed. Costs of the appeal are to be paid by appellant.
AFFIRMED.