WALTER D. HAMLIN, Judge ad hoc.
On April 4, 1955, plaintiff, Albert D. Cou-lon, instituted this suit against defendants, Anthony Hamlin, Inc., Anthony W. Hamlin, and their insurer, Marquette Casualty Company, endeavoring to recover workmen’s compensation in the sum of $30 per week for a period of four hundred weeks, for injuries alleged to have been sustained by him while acting in the scope of his employment on April 8, 1954, almost one year before the filing of the original petition.
In his original petition plaintiff alleged that on or about April 8, 1954, while working as a painter on a steel structure in or near Avondale, Louisiana, in the Parish of Jefferson, he “was injured in the course of moving a large board which was being used to stand on to do the painting work, when his right hand became caught between one end of the board and a steel beam on which petitioner was sitting, with the result that petitioner suddenly jerked his hand backwards to remove it from between the board and the beam and in so doing his hand struck one of the steel columns of the steel structure on which the painting work was being done.” That as a result he suffered injuries to his right hand.
Defendants answered denying that the accident suffered by plaintiff was severe and disabling and averring that plaintiff received treatment therefor and continued at work until his injuries were completely healed and that he was discharged as cured on June 4, 1954.
On June 14, 1955, plaintiff filed a supplemental and amended petition in which he alleged that:
“ * * * while working as a painter on a steel structure in or near Avon-dale, Louisiana, in the Parish of Jefferson (he) was injured in the course of moving a large board which was being used to stand or sit on to do the painting work, the accident occurring in the following manner:
“Petitioner was sitting a-straddle a board resting on steel beams petitioner being at one end of the board and another painter at the opposite end; both men attempted to turn the board around a steel column and while doing so the board became overbalanced threatening to hit petitioner’s right hand and causing petitioner to draw his hand back in an effort to grab hold of a cross beam but instead his hand struck a steel column. Meanwhile the man at the opposite end of the board from petitioner released the end he was holding and the weight of the board which petitioner was holding to keep it from falling on other workers below tended to overbalance him from his straddle *559 position and caused his entire weight together with the board to be supported only by his right wrist and arm which became caught in a V-joint brace of one of the steel columns.”
Plaintiff then asserted that as a result of this accident he also suffered injuries to his right arm and shoulder consisting of a stretch type injury to the lower portion of the right brachial plexus, resulting in a nerve route injury and manifesting itself in a limited use and function of the right hand and the entire right arm.
Defendants answered the supplemental and amended petition denying the allegations thereof, and alleging that the allegations of plaintiff’s original petition are in conflict with plaintiff’s amended petition.
From a judgment in favor of defendants, dismissing plaintiff’s suit, he has prosecuted this appeal.
Harry J. Coulon, the first witness for plaintiff, testified that he saw plaintiff jerk his hand back and hit the steel column. He says nothing about plaintiff’s wrist and arm being caught in a V-joint brace of one of the steel columns, as alleged by plaintiff in his supplemental and amended petition.
Albert D. Coulon, plaintiff, testified that, in grabbing at the brace he missed and his hand went beyond the brace and “kind of hung” in a fork and gave him a good hold; it gave him a “pretty hard jerk” because the board was heavy. He generally described the occurrence as alleged in his supplemental and amended petition. He also testified that he sustained a previous injury to the thumb of his right hand.
Drs. John D. Andrews, David A. Freedman, Irvin Cahen and John A. Colclough all testified that when plaintiff spoke to them he did not describe the occurrence as set forth in his supplemental and amended petition.
Arthur A. Carmody, a witness for the de-fpndant, testified that plaintiff told him his right hand was caught under a board and a steel beam and in pulling his hand out he hit it against another steel beam; that plaintiff made no. reference to being overbalanced.
Plaintiff called as his medical witnesses Drs. Raeburn C. Llewellyn, David A. Freedman, Thomas Lee Duncan and Irvin Cahen, all of whom, except Dr. Cahen, examined plaintiff after this suit was filed, and more than one year after the accident, Dr. Cahen being the first to examine plaintiff on March 29, 1955.
Defendants called Drs. John D. Andrews, Nathan H. Polmer and John A. Colclough.
There was a stipulation as to the testimony of Dr. George Berkett and Drs. All-dridge and Riordan.
None of the physicians produced by plaintiff testified with certainty that plaintiff’s physical condition is the result of the occurrence.
Dr. Llewellyn, when asked whether he could say that the type of occurrence could cause the condition that he found to exist in plaintiff’s arm, replied:
“I don’t feel that the injury or the appearance of the man’s hand now could be attributed to any specific type of injury, specific nerve injury, or specific bone injury.”
However, he testified that it could be.
Dr. Freedman testified as follows:—
“In my conclusion, the history I got was quite relevant. The reason why I am here is that Mr. Lucas later presented me with another history which was radically different from the one that I obtained from the patient and which made a radically different evaluation of what I found.
“That is the history I obtained, the letter I wrote to Mr. Lucas was on the basis of what I obtained, I could not see any possibility of a relation between the findings of this man'ánd this *560 man’s complaint and the injury he described.
“He gave a radically different history and in response to a request of Mr. Lucas, what he obtained, I had to say this on the basis of this new history it was a possibility. I had to admit of a possibility, there was a possibility. I had to admit of a possibility that there was a connection.”
Generally, the testimony of Dr. Freedman was to the effect that on the basis of the history the plaintiff gave him, he could not explain plaintiff’s trouble.
Dr. Freedman testified further:
“I got a phone call from Mr, Lucas in October telling me about a re-examination of this man by Dr. Llewellyn in the course of which Dr. Llewellyn had elicited a new history.
“Mr. Lucas asked me whether I would be willing to see him again and also wrote to me along the same lines and I indicated that so far as my findings were concerned, I was satisfied. That it didn’t seem to me to be particularly relevant to examine the man again, but if there is a different history, all right.
“Then, maybe my opinion as to the relation to his symptoms and whatever happened may be different. That would be because on the basis of the history. If there would be a new history I would be willing to accept Dr. Llewellyn’s history as the valid one.
“On that basis, Mr. Lucas sent me a copy of Dr. Llewellyn’s report to him and a letter. I read the report and I had to conclude and I found the findings Dr. Llewellyn reported were not significantly different from the ones that I had elicited when I examined' Mr. Coulon and I returned a letter to him saying in effect that I reviewed Dr. Llewellyn’s report concerning Mr. Coulon and discussed the problem with Dr. Llewellyn.
“I am certainly prepared to accept the possibility in view of the history obtained that Mr. Coulon’s symptoms may be secondary to his accident. Whether it would serve any useful purpose to me to see the man again is another question. It wasn’t on the basis of any examination.”
Dr. Freedman also testified that there is a possibility that plaintiff has osteoarthritis of the spine; that there could have been other kinds of local injury; that plaintiff might have wrenched his neck in a minor automobile accident; that he could have stretched his muscles some place other than on the particular job he was performing on April 8, 1954; that plaintiff has a deformity of his right thumb, and that it is conceivable that deformity may account for his present condition.
Dr. Duncan testified:
“Q. The condition that you found, are you in a position to say that was the result of this history of the accident described in the history? A. I felt then and now that the condition I found him in at my initial examination and that my subsequent examination was more due to his favoring the extremity and not using it than to any definite injury he might have sustained at the time of his almost falling from the scaffold.”
Dr. Cahen testified:
“I examined the man from an orthopedic standpoint and in my examination I determined I could find no disability relative to his elbow area and whatever injury he may have had at the original time, I found no evidence to indicate residual.”
Dr. Cahen also stated that from an orthopedic standpoint he found no residual to the fracture of the bone or any residual disability relative to his fracture or to his hand. The only conclusion he reached on his second interpretation was to the effect that *561 from an orthopedic standpoint he found no residual disability relative to plaintiff’s fracture or to his hand.
Dr. John D. Andrews, a witness for defendants, examined plaintiff on April 8, 1954, and treated him; he discharged plaintiff June 4, 1954, as being able to return to the work he performed at the time of the injury.
Dr. Nathan H. Polmer examined plaintiff on February 2 and 6, 1956. He made an electro-diagnostic test on plaintiff and plaintiff responded to the test.
Dr. John A. Colclough examined plaintiff February 1, 1956, and testified that he does not believe that the condition he found is referable to the accident described by plaintiff to him.
Considering the evidence as a whole, we are forced to conclude that it preponderates to the effect that plaintiff’s physical disability is not attributable to the occurrence which took place on April 8, 1954.
Since plaintiff was paid a gratuity by defendants, and not for any serious work performed, we believe that this is equivalent to his having received compensation between April 8, 1954 and the date of his discharge by Mr. Andrews on June 4, 1954.
The trial judge saw and heard the witnesses, and came to the conclusion that plaintiff was not entitled to recover; we do not believe that he committed error and his judgment should not be disturbed.
For the reasons assigned the judgment appealed from is affirmed at the cost of plaintiff.
Affirmed.
REGAN, J., absent, takes no part.