AYRES, Judge.
By this action plaintiff seeks to recover damages for personal injuries sustained by him and damages done to his automobile because of a collision with an automobile of the defendant, Ford, at or near the intersection of Powell Avenue and Milhaven Road immediately east of the corporate limits of the City of Monroe on the night of November 9, 1956.
Negligence charged to defendant’s driver is that he was driving at an excessive rate of speed and failed to keep a proper lookout or to maintain proper control of his-vehicle. Defendants denied any act of negligence on the part of their driver and’, charged negligence to plaintiff as a cause-of said accident, particularly in failing to-accord defendant’s driver the right of way-on the Milhaven Road and by his failure-to keep a proper lookout. Alternatively, plaintiff was charged with contributory negligence in the aforesaid particulars.
The conclusion of the trial court was that defendant’s driver was negligent-in failing to keep his automobile under-control after observing the approach of' the other automobile, and that plaintiff was. guilty of contributory negligence by driving into the intersection after observing-the approach of defendant’s vehicle, the nearness of which he misjudged until it-was too late to avoid a collision. Accordingly, judgment was rendered rejecting plaintiff’s demands, from which he has. appealed. The defendants have neither appealed nor answered plaintiff’s appeal. Therefore, the finding of negligence on-the part of defendant’s driver is final and' conclusive. Nevertheless, we may state our- *791 own review of the record discloses no manifest error in that conclusion. Therefore, only for resolution on this appeal is the question of contributory negligence vel non on the part of plaintiff.
The record establishes that the accident occurred about 11:30 o’clock P.M. on the aforesaid date and, as stated, at or near the intersection of Powell Avenue and the Milhaven Road. The Milhaven Road is an asphalt surfaced highway, with a width of 22 feet, running in a general east and west course. Parallel to this highway and adjacent to it on the north is the Illinois Central Road, constructed on an elevation approximately five and one-half feet higher than the roadbed of the highway. Powell Avenue, also black topped to a width of 18 feet, runs generally north and south, and after crossing the railroad forms a “T” intersection with the highway. Defendant’s car was proceeding eastward along Milhaven Road approaching the aforesaid intersection with Powell Avenue, driven by William Ford, Jr., a minor, accompanied by five other teenagers, who were pleasure riding after attending a “sock hop” or teenage dance in the gymnasium of the Ouachita Parish High School. Their speed was approximately 60 miles per hour.
Plaintiff was driving his automobile south on Powell Avenue accompanied by three other persons, likewise on a pleasure trip, with Rayville as their destination. These facts may be said to have been fairly established by the record. When plaintiff arrived at the railroad crossing, he stopped and looked in both directions, but whether a train was approaching the crossing was not conclusively shown. Nevertheless, plaintiff continued across the railroad to Milhaven Road, where he again stopped near a stop sign. From this position he made observation as to traffic upon the main highway, into the intersection of which he intended to drive. No traffic was observed approaching from the east, but a vehicle, later determined to be that of defendant Ford, was approaching from the west. Plaintiff testified he not only looked once but twice at the approaching automobile to ascertain whether he had sufficient time to enter the intersection and make a turn to his left or to the east toward his destination. Concluding he had sufficient time and opportunity to execute the maneuver intended, he proceeded into the intersection, reached the south side of the highway, or the east traffic lane thereof, when he suddenly realized the nearness of the approach of the oncoming vehicle, whereupon, in order to avoid a possible collision from the rear, he speeded up. Nevertheless, when about 100 feet from the center of the intersection, his car was struck from the rear by defendant’s car, after which plaintiff’s vehicle continued forward and came to rest in the right roadside ditch, some 15 to 25 feet distant from the point of impact. Defendant’s car took a course to the left of the highway.
Defendants’ version of the accident, as related by William Ford, Jr., and his companions, is that as plaintiff’s car was seen crossing the railroad tracks, Ford decelerated the speed of his car, but when about 350 feet away, on seeing plaintiff stopped at the intersection, he again resumed his speed, but that when only about 125 feet distant from the intersection plaintiff suddenly drove into the intersection in front of defendant’s approaching automobile, notwithstanding that Ford blew his horn and gave further warning of his approach. The collision was inevitable notwithstanding defendant’s driver applied his brakes in an effort to avoid the occurrence.
The testimony that defendant’s car was as far as 1,350 feet when plaintiff stopped at the intersection is unsatisfactory and unconvincing in view of the facts surrounding the actual occurrence. The various estimates, mere guesses, are of little probative value. The fact that on plaintiff’s entrance into the intersection he immediately heard the blowing of defendant’s horn and the onrushing of his car attests to the fact of the nearness of its approach. *792 It could only be concluded that plaintiff was not maintaining a proper lookout, otherwise he would have seen defendant’s car, obviously only a short distance from the intersection. Plaintiff’s observation, therefore, was faulty and grossly inadequate, otherwise, it is but reasonable to conclude he should have realized that it was unsafe for him to proceed, under the circumstances, into an intersection of a main highway from an inferior street.
That the court correctly reached the conclusion that plaintiff was guilty of negligence in entering the intersection after seeing, or after he should have seen, the nearness of the approach of defendant’s automobile, is amply supported and borne out by the record. From the record it could only be concluded that the Ford car was much closer to the intersection than plaintiff possibly thought at the time he drove into the intersection. That it is the duty of motorists entering a right of way street or main thoroughfare to appraise traffic conditions and to make certain the way is clear for safe passage and that the failure to do so constitutes negligence is well established in the jurisprudence. For instance, it was stated in Chase v. Burley, La.App., 76 So.2d 587, 590:
“We take this occasion to point out the fact that there seems to be a somewhat prevalent idea among automobile drivers to the effect that when one has brought a vehicle to a stop, as required by law, before entering an intersection with a favored street he has fulfilled the requirements of the law. This is but a part, indeed the least effective part, of a motorist’s duty. The very purpose of stopping is to permit the opportunity for a full and complete observation in both directions along the favored street in order to ascertain the presence of approaching traffic which might interfere with free and safe passage across such favored highway.”
This court likewise had occasion to state, in Morris v. Weaver, 81 So.2d 19, 22:
“It is clear that even if Morris came to a complete stop at Savage Street,, which we seriously doubt, he failed to. observe the duty of care which has. been stated repeatedly in the decisions of the appellate courts of this state and which declare that to stop before entering a right-of-way street but discharges half of the duty imposed upon a motorist. This action must be followed by careful observance of traffic conditions on the right-of-way street and no entry therein made unless the-conditions clearly warrant it’’ (Emphasis supplied.)
In addition, this court, in Rachow v. Ringwald, 87 So.2d 173, 175, more recently observed that—
“The jurisprudence is well settled on the proposition that a motorist is held to the duty of seeing what he should have seen, and that a motorist,, when confronted with a stop sign erected by the proper officials of a city, in addition to being legally obligated to bring his vehicle to a stop before entering a right of way street, is held to the duty of appraising traffic conditions in the intersection and of making certain that the way is clear fc him to make a safe passage across the intersection. In merely stopping his vehicle before entering an intersection, he has performed only half of the duty which the law imposes upon him. To stop and then proceed into the intersection in the immediate path of approaching traffic constitutes gross negligence.”
The conclusion is, therefore, inescapable that plaintiff was guilty of contributory negligence in failing to accord defendant’s car the right of way to which it was entitled upon a main highway and in his failure to make proper observation and to keep a proper lookout in entering the aforesaid intersection.
*793 Neither do we find error in the judgment condemning plaintiff for the payment of costs of court, although he was authorized to prosecute this action in forma pauperis in accordance with the provisions of LSA-R.S. 13:4525 et seq., in view of § 4528 wherein it is provided:
“If the litigant exercising the privilege granted by [LSA-] R.S. 13:4525 through 13:4529 is cast, he shall be condemned to pay the costs incurred by him and the costs recoverable by the other parties to the action.”
Coulon v. Anthony Hamlin, Inc., La. App., 93 So.2d 557, affirmed by the Supreme Court, 233 La. 798, 98 So.2d 193.
Accordingly, the judgment appealed is affirmed at appellant’s cost.
Affirmed.