GLADNEY, Judge.
This is an action in tort by Willie E. Broadway against Ray J. Purdue and Firemen’s Insurance Company to recover for personal injuries and property damage occasioned by an automobile collision on March 18, 1957, which occurred on State Highway No. 120, between Robeline and Marthaville in Natchitoches Parish. After a trial, judgment was rendered in favor of defendants rejecting plaintiff’s demands, and the latter has appealed.
On the above mentioned date at about 2:30 P.M. the defendant Purdue was traveling south on State Plighway No. 120, and when about three miles north of Robeline the Chevrolet automobile which he was driving collided with a Ford pick-up truck driven by plaintiff who was approaching the highway from the west on a private driveway at the home of C. F. Berry. Following the collision the Purdue car came to a rest seventy feet south of the point of impact and was facing east, and the truck was six or eight feet south of the point of impact facing south on the west side of the highway. The accident was witnessed by both drivers and L. F. Berry and C. F. Berry, both of whom were passengers in the Ford truck. After the accident Trooper Herman Q. Byrd appeared on the scene and made an investigation before the cars were moved.
Plaintiff alleges Purdue was negligent in driving his vehicle at an excessive rate of speed, in not maintaining proper control over his vehicle, and in driving under the influence of liquor. Charges of contributory negligence were made by the defendants who aver plaintiff was negligent in driving suddenly from a private driveway into a superior public highway without warning and at a time when it was unsafe to make such a maneuver.
This legal controversy involves principally factual issues, of which probably the principal and controlling one is whether or not plaintiff’s truck had been driven onto the highway as Purdue approached. It is the contention of plaintiff no portion of the truck extended to or over the blacktop surface, an assertion which Purdue denies and says that at the time he made application of his brakes the truck was in such proximity to the highway and was moving at such speed a collision between the vehicles was imminent. The testimony on this point, although conflicting, was resolved by the district court in favor of the defendants.
Trooper Byrd testified the highway on either side of the locus of the collision was *807 straight and level for some distance except that to the north at a point farther than 350 feet from the Berry driveway there was an incline in the highway which, to some extent, obscures the vision of motorists traveling south until they top this hill or elevated surface of the thoroughfare. Defendant estimated the crest of the hill at about 450 feet distant from the Berry driveway and others estimated this distance to be 522 feet. A finding of the exact distance is not important. The evidence indicates that at a point approximately 74 yards north of the point of impact Purdue applied his brakes which locked and caused his car to skid. Before reaching the Berry driveway the car turned sideways and was skidding in this manner when its right side struck the left front part of the Ford truck. The automobile then continued on its own momentum and knocked over a signpost before coming to a stop. Trooper Byrd did not measure the skid marks of the Purdue automobile, but testified the tire marks indicated the car was making a side sweep as it traveled sideways with its brakes locked. He testified the westernmost evidence of skid marks was three feet east of the west edge of the blacktop. L. F. Berry, a passenger in the truck, testified no portion of the truck had entered on the highway but the front wheels of the truck stopped about eighteen inches west of the edge of the blacktop, and that the bumper of the Purdue car extending over the shoulder of the highway attached itself to the Ford truck and pulled it over into the highway. Plaintiff and C. F. Berry sought in an unimpressive manner to corroborate this version of how the impact took place. Trooper Byrd was of the opinion the truck had entered the highway and was several feet over on the blacktop at the time of the collision. L. F. Berry testified that when he noticed the approach of Purdue at a high rate of speed, he yelled to Broadway: “Look out”, and the truck stopped immediately. Berry says that when he yelled, the truck was “within three or four feet, I’d say — you know, just on the highway.” Measurements taken of the rear end of the Chevrolet indicate the body of the car extended forty-six inches to the rear of its tires.
The charge that Purdue was traveling at a rate of speed in excess of sixty miles per hour may have merit, but need not be determined. He testified his speed was not in excess of sixty and Trooper Byrd agreed when asked for an opinion. Occupants of the Ford truck estimated Purdue’s speed as high as ninety miles per hour, but we doubt if they were competent to judge the speed of the approaching Chevrolet car for the effect of their testimony is they did not see it until almost the moment of the impact. The other implications of negligence directed at Purdue were not proven. Therefore, resolution of the case can well be restricted to a ruling on whether or not Broadway was guilty of contributory negligence in suddenly driving his vehicle upon the main highway from a private driveway without proper observation or warning and at a time when it was unsafe to make such a maneuver.
We find Broadway was guilty of contributory negligence in not maintaining a proper observation of traffic on the highway before attempting to enter thereon. The record clearly reflects the Ford truck when brought to a stop by its driver protruded out into and over the blacktop surface of the highway and justified Purdue in assuming a collision was imminent. It is a well-recognized and familiar rule in our jurisprudence that it is the duty of motorists before entering a superior thoroughfare to appraise traffic conditions and make certain the way is clear for safe passage, and failure to do this constitutes negligence which is a proximate cause of a resulting accident. See: Stroud v. Davis-Lawhead Funeral Home, La.App.1934, 154 So. 476; Goff v. Sinclair Refining Company, La.App.1935, 162 So. 452; Bendish v. Roberts, La.App.1946, 24 So.2d 688; Williams v. Ford, La.App.1958, 102 So.2d 789.
In support of appellant’s right to recovery and a reversal of the decree from which *808 lie has appealed, his counsel has cited: Gaubert v. Ed. E. Hebert Company, Inc., La.App.1937, 174 So. 716; Strehle v. Giaise, La.App.1950, 46 So.2d 685, and Carlson v. Fidelity Mutual Insurance Company, La.App.1956, 88 So.2d 461.
Gaubert v. Ed. E. Hebert Company, Inc. involved an accident which occurred when the driver of defendant’s truck suddenly entered the highway and proceeded to cross it diagonally when plaintiff was traveling north on the highway. A judgment in favor of plaintiff was reversed and plaintiff’s suit was dismissed. The effect of the judgment of the appellate court was to hold both drivers negligent. In Strehle v. Giaise a truck of the defendant had backed out of a private driveway, had turned and was proceeding down the highway when struck in the rear by plaintiff, who was traveling on the highway. A judgment in favor of plaintiff was reversed and plaintiff was held guilty of contributory negligence for the court was convinced plaintiff had ample time to avoid the collision, but failed to do so. Carlson v. Fidelity Mutual Insurance Company, involved an intersectional collision. Thus, the factual situation in each of these cases is so dissimilar from our appreciation of the determinative facts in the instant case, we consider the cited authorities inapposite.
The evidence as adduced in the case, we think, shows clearly that plaintiff was attempting to enter the highway from a private driveway at a time when the approach of defendant, Purdue, could have been observed by plaintiff, and the danger of entering the highway realized. Had he thus been more careful in his observation, Broadway would have brought his truck to a stop at a safe distance from the highway and the accident would not have occurred. While it would be difficult to determine the speed of Purdue from the existing recognized tables and charts, such as the Bendix Charts found in Blashfield’s Cyclopedia of Automobile Law and Practice, Volume 9, Part 2, Section 2327, page 706, the issue as to Purdue’s speed is not important on the appeal for the negligence of Broadway is clearly shown to have been a contributing and proximate cause of the accident.
For the reasons hereinabove set forth, the judgment from which appealed is affirmed at appellant’s cost.