229 So.2d 118 (1969)
Mrs. Elvin Coyle ODOM, Plaintiff-Appellant-Appellee,
v.
TEXAS FARM PRODUCTS COMPANY et al., Defendants-Appellants-Appellees.
No. 11307.
Court of Appeal of Louisiana, Second Circuit.
November 18, 1969.
Rehearing Denied January 6, 1970.
*120 Booth, Lockard, Jack, Pleasant & LeSage, by H. F. Sockrider, Jr., Shreveport, for plaintiff-appellant-appellee.
Bodenheimer, Jones, Klotz & Simmons, by G. M. Bodenheimer, Jr., Shreveport, for Hurchiel W. Crawford, Texas Farm Products Co., and American Motorist Ins. Co., defendants-appellants-appellees.
Rogers & Loridans, by Graham W. Rogers, Bossier City, for Otis S. Auld, Yellow Cab Co. of Shreveport, and Fidelity General Ins. Co., defendants-appellants-appellees.
Mayer & Smith, by Paul R. Mayer, Shreveport, for Varner D. Carson and Hartford Accident and Indemnity Co., defendants-appellants-appellees.
Frederick J. Stewart, Shreveport, for Varner D. Carson, defendant-appellant-appellee.
Lunn, Irion, Switzer, Johnson & Salley, by Harry A. Johnson, Jr., Shreveport, for State Farm Mutual Automobile Ins. Co., defendant-appellee.
Before AYRES, DIXON and PRICE, JJ.
AYRES, Judge.
By this action in tort plaintiff seeks to recover damages for personal injuries sustained in a motor vehicle collision of January 13, 1967, at Red Chute, Louisiana, on U. S. Highway 80. Directly involved in the collision were the family Chevrolet in which plaintiff was a guest of her husband, Troy S. Odom, and a Mack tank-truck-and-trailer unit of Texas Farm Products Company, operated by its employee Hurchiel W. Crawford. Indirectly *121 involved were a Ford owned and operated by Varner D. Carson and a taxicab of Yellow Cab Company of Shreveport, operated by Otis S. Auld. Made defendants in addition to the above-named owners and operators of the Ford, truck-trailer, and taxicab were their respective insurers, Hartford Accident and Indemnity Company, American Motorist Insurance Company, and Fidelity General Insurance Company, as well as State Farm Mutual Automobile Insurance Company, insurer of the Odom Chevrolet.
There was judgment, after trial, in favor of plaintiff and against all defendants in solido, except State Farm Mutual Automobile Insurance Company, for the principal sum of $15,000 plus interest and costs, but limited in principal as to Hartford Accident and Indemnity Company, by its contractual coverage, to $5,000. It may be noted that Troy S. Odom was found to have been without fault. Hence plaintiff's demands as to his insurer were rejected. From the judgment, all defendants condemned therein appealed either suspensively or devolutively or both. In addition, plaintiff prosecutes a devolutive appeal.
No good purpose would be served by a detailed review and analysis of the testimony of each of the several witnesses as such testimony relates to the facts and circumstances which led to and were included in the occurrence of the accident. A synopsis of the established facts as we view them, from a painstaking review of the record, is deemed sufficient. Additional comments, however, may be noted in reviewing the actions of the parties involved with respect to the charges of negligence primarily directed to each of them.
The highway, asphalt surfaced at the scene of the accident, is a main 4-lane thoroughfare with a median separating the eastbound and westbound traffic lanes. The accident occurred about 9:00 p. m., on a dark night, when the highway surface was wet from a rain which preceded the accident. The taxicab, headed east, was stopped on the right, or outer, eastbound traffic lane. The Carson Ford backed out of a driveway from the south leading to the highway, in front of the taxicab, and then proceeded into the inner eastbound traffic lane, after which it proceeded easterly to a nearby crossover, made a U-turn, and proceeded westerly.
The Mack truck and the Odom car were, in that order, proceeding easterly in the outer traffic lane. Though the lights of the taxicab were on, the presence or movement of the cab was not discernible to the truck driver until the truck neared the location where the taxicab was stopped. On perceiving that the taxicab was stationary, Crawford, the driver of the truck, changed to the inner eastbound traffic lane to effect a passing movement. After the truck was committed to this maneuver, Carson, in the Ford, backed from the driveway into the highway, blocking the inner traffic lane then occupied by the truck, whereupon its driver, on applying its brakes, brought the truck to a halt to avoid striking the Ford. The Odom Chevrolet, which had been trailing the truck for some appreciable distance in the outer lane, also changed to the inner traffic lane. As the truck reduced speed, Odom overtook and struck the truck as it was being brought to a stop. The left front of the Chevrolet struck the right rear of the trucktrailer combination and the car swerved to the right, eventually coming to rest in the right roadway ditch. The truck was stopped in the inner traffic lane.
Defendant Carson concedes his negligence as a participating causal factor in the occurrence of the accident, as the record indeed well establishes. Carson was intoxicated as a result of excessive drinking during the afternoon and night at the home of Clyde P. Colvin, located south of the highway and from which the driveway led to the highway. On arriving at the Colvin home, Carson parked his car on the driveway. He obviously experienced some difficulty in starting and operating his vehicle. To obtain a needed part, a taxicab was called and Auld, the driver, after *122 carrying Carson to a garage to secure the necessary part, returned Carson to the Colvin residence. The taxicab was parked in the outer eastbound traffic lane until the repair on Carson's vehicle was completed, after which it was backed away from the driveway to permit Carson to back onto the highway. Carson then backed his car onto the highway, passing in front of the taxicab, as heretofore stated, and continuing into the inner traffic lane and in front of the truck as it was engaged in a passing movement to the left of the taxicab.
How far Carson backed into the highway is a matter concerning which there was some disagreement. Auld at first testified that Carson backed into the inner traffic lane but later contradicted himself. Crawford, who, as driver of the truck, was in a favorable position, from the vantage point in his cab, to see Carson's movement, testified most positively that Carson backed into and blocked the inner eastbound traffic lane. Had Carson not done so, there would have been no reason for Crawford to have slowed the speed of or to have stopped the truck. Carson testified of having seen a vehicle approaching from the west, in the outer traffic lane, and, though his vision became obstructed by the taxicab, he nevertheless continued his movement into the truck's lane of travel when the truck was only 50 to 60 feet from the taxicab.
LSA-R.S. 32:124 provides in part:
"The driver of a vehicle about to enter * * * a highway from a private * * driveway * * * shall stop * * * and shall yield the right of way * * * to all approaching vehicles so close as to constitute an immediate hazard."
As pointed out in Broadway v. Purdue, 108 So.2d 805, 807 (La.App., 2d Cir. 1959):
"It is a well-recognized and familiar rule in our jurisprudence that it is the duty of motorists before entering a superior thoroughfare to appraise traffic conditions and make certain the way is clear for safe passage, and failure to do this constitutes negligence which is a proximate cause of a resulting accident."
See, also:
Holland v. United States Fidelity & Guaranty Co., 131 So.2d 574 (La.App., 2d Cir. 1961); Josey v. Granite State Fire Insurance Company, 122 So.2d 303, 306 (La.App., 2d Cir. 1960cert. denied).
In the latter case it was recognized that "An unusual degree of care is required of motorists who drive vehicles from a private driveway into a highway, and this requirement is increased when the vehicle is being backed into the highway."
There was, as stated, some dispute as to just how far Carson backed into the highway, but we have concluded that by this maneuver Carson blocked the inner eastbound traffic lane. However, whether he backed that far or not is immaterial. As Carson admits and as the record establishes, after backing onto the highway, he entered and crossed over that lane in making a U-turn only a short distance ahead. The legal effects are the same. His vehicle suddenly became an obstruction to the safe passage of the truck.
The negligence of Auld, the taxicab driver, is also clearly established. His conduct clearly violated the provisions of LSA-R.S. 32:141 (A) and (C). There it is provided:
"A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance *123 of two hundred feet in each direction upon such highway.
"C. The driver of any vehicle left parked, attended or unattended, on any highway, between sunset and sunrise, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence."
These provisions are applicable to a semiresidential area such as involved in the instant case. West v. Kenknight, 193 So. 2d 408 (La.App., 2d Cir.1966). There the principle was recognized that a violation of statutes relating to the parking of vehicles upon a main-traveled portion of a highway constitutes negligence per se and is actionable if there is a causal relationship with the accident.
Thus, a motorist who parks his automobile upon the traveled portion of a highway is a prima facie violator of the statute, and, to avoid liability for damages resulting therefrom, it is incumbent upon him to affirmatively establish the necessity for him to have so parked his vehicle.
The statute LSA-R.S. 32:141 was designed to protect life and property on the highway. It is a safety measure. "The violation of its provisions is negligence per se, and this negligence is actionable if it was a legal cause of the collision," so said the Supreme Court in Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298, 302 (1962), in construing LSA-R.S. 32:241, a prior statute covering the same subject. Under the provisions of the former statute, this court, in Smith v. Henry, 147 So.2d 416, 419 (La.App., 2d Cir. 1962writs denied), held that where a driver temporarily stopped a truck partly on a heavily traveled highway at night, when he could have stopped completely off of the highway, was guilty of negligence when the vehicle so parked was struck by an automobile.
The parking or stopping of the taxicab on U. S. Highway 80 in or near Shreveport or Bossier City, a temporary segment of Interstate 20, without any necessity therefor, when such stopping or parking could as easily have been made off the highway, is so dangerous as to virtually constitute an invitation to suicide. This danger was known, or should have been obvious, to Auld, a taxicab driver of many years' service in the area.
The negligence of Hurchiel Crawford, driver of the truck, is dependent upon the application vel non of the sudden-emergency doctrine to the facts of this case. This rule, generally stated, is that, when a motorist is confronted with a sudden emergency or danger, not of his own making and to which he did not contribute, he will not be held responsible for error of judgment committed by him in the emergency, provided he exercises ordinary, prudent, and reasonable care under the circumstances. Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127 (1956); Commercial Standard Insurance Company v. Johnson, 228 La. 273, 82 So.2d 8 (1955); Phillips v. Garden, 211 So.2d 735 (La.App., 2d Cir. 1968); Thibodeaux v. Gore, 124 So.2d 336, 337 (La.App., 3d Cir.1960); Wiley v. Sutphin, 108 So.2d 256 (La.App., 2d Cir. 1958); Bourgeois v. Fidelity & Casualty Co. of New York, 102 So.2d 532 (La.App., 1st Cir.1958). Hence, Crawford's sudden stopping on and blocking of the inner traffic lane of the highway is excusable if (1) he was free from fault in having to stop so suddenly and (2) if he was free from fault in the manner of his stopping. The trial court concluded that:
"* * * Mr. Crawford was negligent in the operation of the truck in that he did not see the parked cab and the backing automobile soon enough to take proper evasive action, and that his turning his truck suddenly to the left and applying the brakes with such force that it was brought to a stop almost within its own length, even if he had managed to get entirely into the inside lane before he completed his stop, was negligence which proximately contributed to this accident. While it is true he was confronted *124 with an apparent emergency, his action created another as far as the Odoms were concerned." (Emphasis supplied.)
In the absence of an emergency, the first portion of the court's conclusion possibly possesses some merit. However, the court conceded that Crawford was confronted with an emergency though his action created another emergency insofar as the following vehicle was concerned.
There is a general rule that a motorist may assume that a highway is safe for travel even at night, and that a motorist traveling by night is not charged with the duty of guarding against striking an unexpected or unusual obstruction which he had no reason to anticipate he would encounter in the highway. Vowell v. Manufacturers Casualty Insurance Co., 229 La. 798, 86 So.2d 909, 913 (1956). The obstruction in the highway in the cited case was a Chevrolet truck and semitrailer, loaded with lumber, parked in plaintiff's traffic lane on Highway 80 about five miles west of Minden.
Therefore, in the instant case, Crawford was not charged with the duty of guarding against striking the taxicab which he had no reason to anticipate he would encounter on the highway. Nevertheless, when he realized the taxicab had stopped in his traffic lane, he immediately drove his truck-trailer unit toward and into the inner, or left, traffic lane, and, on seeing the Ford backing into and blocking that lane of travel, he reduced his speed and brought his unit to a stop. This, of course, created an emergency for Odom, who had changed the course of his car by proceeding into the inner lane as Crawford had done. The fact that Crawford's actions created an emergency for the following vehicle did not minimize the emergency created by Carson and Auld which confronted Crawford. Except for the emergency confronting him, Crawford's actions, in attempting a passing movement when it was unsafe to do so, would have constituted negligence. The rule under the sudden-emergency doctrine, however, excuses him from its effect.
The conclusion is inescapable that Crawford was confronted with a sudden emergency not of his own making and to which he did not contribute, and that, from whatever negligence he may have been otherwise guilty, he is, by the rule of the sudden-emergency doctrine, excused.
The same rules apply in considering the charges of negligence directed against Troy S. Odom. Carson's backing of his automobile into the highway was so sudden, so unexpected, and accomplished, or completed, at a time when Crawford was in a passing movement to the left of the taxicab that Crawford had neither time, space, nor opportunity to do anything effective to warn following traffic. Following the truck-and-tank-trailer combination, Odom obviously was not in position to see the taxicab or to observe Carson's backing onto the highway. He was only in position to observe the taxicab and Ford after Crawford observed them, changed traffic lanes, and thereby removed the truck as an obstruction to Odom's view. Odom, with little or no time or opportunity to take any evasive action, also attempted a change of lanes. In so doing, his car struck the truck which had only momentarily preceded him into the passing lane. His efforts to avert an impending disaster were those of a reasonable and prudent motorist. It can hardly be said, under the circumstances, that he had a choice of means to avoid the accident. If error was committed, he is excused from its effects by the sudden emergency which confronted him.
Negligence is, however, charged to Odom in not maintaining a proper lookout. This was based upon his testimony that he had no recollection of seeing the truck until it suddenly showed up in front of him in his lane of travel. His actions, however, such as an attempt to change traffic lanes when confronted with the taxicab *125 parked in his lane of travel, outweigh and are more convincing than his recollection of events which shocked his mind and clouded his memory. Moreover, it is not shown that this purported dereliction of momentary inattention was a substantial factor in the occurrence of the accident or without it the accident would not have occurred, or that it had any causal relationship with the accident. To the contrary, the evidence is convincing that Odom took evasive action promptly, as soon as he saw, or could have seen, the taxicab in his lane of travel.
Odom was under no burden to establish his freedom from fault or from negligence. The burden to establish his negligence or contributory negligence was upon those who asserted it. This has not been done by a reasonable preponderance of evidence to any degree of legal certainty.
Lastly for consideration is the question of the quantum of the award that would fairly and reasonably compensate plaintiff for the injuries sustained and the pain and suffering endured. Defendants Otis S. Auld, Yellow Cab Company of Shreveport, and Fidelity General Insurance Company attack the award as being excessive; plaintiff contends it is inadequate and prays for an increase.
As a result of the accident, Mrs. Odom sustained serious and painful injuries. She was hospitalized from January 13, 1967, through March 17, 1967. She was first seen in the Minden Sanitarium by Dr. S. W. Pittman, a general practitioner, within 30 minutes following the accident. She was administered first aid. An emergency examination disclosed she had sustained deep facial abrasions from a broken windshield, with glass imbedded in her forehead, and a comminuted fracture of the tibial plateaus of the leg bones of both legs which extended into the knee joints. Her left knee was considerably swollen. She was suffering intense pain in both knees.
Thereafter, on the night the accident occurred, Mrs. Odom was transferred to Doctor's Hospital, in Shreveport, and placed under the care of Dr. W. W. Fox, III, an orthopedist. Dr. Fox first saw Mrs. Odom in the emergency room of the hospital. His examination disclosed injuries consisting of swelling and tenderness of both knees, a slight valgus deformity (knock-knee) of the right knee, abrasions and contusions of the forehead, a simple fracture of the tibial plateau (shinbone) of the left leg, running obliquely from the medial metaphysis to the midjoint of the knee, and a slightly comminuted, slightly depressed, and slightly angulated fracture of the tibial plateau of the right leg running obliquely from the medial metaphysis into the knee joint. The fractures were similar. The left leg was said to have been more seriously injured.
Mrs. Odom sustained a jagged cut on her right breast. This was sutured by Dr. Pittman. This resulted in a scar. Several scars remained on her forehead. Bruises were sustained to her right arm, both above and below her elbow.
In the process of treatment, Mrs. Odom was first placed in "Buck's" traction for approximately 24 hours. Thereafter, long leg casts, from her high thighs to the bases of her toes, were applied to both legs. The cast on the right leg was removed February 8, 1967; the cast on the left leg was replaced with one extending from her high thigh to her ankle. This latter cast was removed February 26, 1967. After a period of almost two months, Mrs. Odom was permitted the use of an invalid walkerette. About six weeks later she was able to move about with the aid of a cane. She was discharged from treatment May 26, 1967.
At the time of trial, May 28, 1968, plaintiff continued to be troubled with slivers of glass in her forehead, as well as with aches and pains in her knees, particularly after remaining seated for a time. She complained, too, of having to have assistance *126 upon arising from a low chair or sofa; that her legs "gave out" after any prolonged standing or walking; ached at night, with swelling in the knees, accompanied by muscle cramps, particularly in the left leg.
For her injuries, pain, suffering, and disability, plaintiff was awarded the sum of $15,000.00. In making this award, we find, in our review of the record and of the awards made in similar cases, no abuse of the "much discretion" vested in the trial court.
Accordingly, for the reasons assigned, the judgment appealed, as relates to the defendants Hurchiel W. Crawford, Texas Farm Products Company, and American Motorist Insurance Company, is annulled, avoided, reversed, and set aside; and plaintiff's demands against these defendants are rejected. The judgment is otherwise affirmed at the cost of the remaining defendants-appellants.
Reversed in part and affirmed in part.