JASPER E. JONES, Judge.
Plaintiff, Nellie Parr, appeals a judgment rejecting her demands for damages for personal injuries sustained in a multi-vehicle collision which occurred on 1-20 in Bossier City on October 16, 1976. We affirm.
The accident occurred at about 11:00 A.M. on a rainy morning on the south side of I -20 in the lanes provided for eastbound traffic a short distance west of the Benton Road exit ramp. There exists a short distance east of the Benton Road exit ramp another exit ramp provided for traffic exiting L20 to Barksdale Boulevard. At the site of the accident there are four eastbound traffic lanes divided from the westbound traffic lanes of I -20 by a concrete division wall. The southerly, or far right, traffic lane is provided for traffic exiting at the Benton Road exit. The lane immediately north of and adjacent to the Benton Road exit lane is provided for traffic exiting at the Barksdale Boulevard ramp. The two lanes north of the Barksdale Boulevard exiting lane are provided for through eastbound I ■ 20 traffic. There exists between the division wall and the two northernmost through lanes of traffic a concrete area that we shall refer to as a shoulder.
There were six vehicles involved in the circumstances surrounding the collisions wherein plaintiff sustained her injury. Just prior to the series of collisions, which will be here described, plaintiff was driving her vehicle easterly • in the southernmost through traffic lane and was approaching the area of the Benton Road exit. Behind her approximately 50 feet' was an 18-wheel-er driven by James H. Oehlke in the northernmost through lane. To plaintiff’s right traveling in the Barksdale exit lane was a pick-up truck belonging to Santa Maria Produce Company, Inc., and operated by R. C. Coatney, Jr. To the right of the Coatney *416 vehicle traveling in the Benton Road exit lane was a pick-up truck operated by William 0. Wissman, followed by a Pontiac automobile driven by Merculus J. Chretien. As these five eastbound vehicles approached the area immediately west of the Benton Road and Barksdale exits, a white vehicle traveling west on the Barksdale exit ramp suddenly entered the portion of 1-20 provided for eastbound traffic. As this westbound vehicle entered 1-20, Coatney was preparing to change from the Barksdale exit lane to the Benton Road exit lane for the purpose of exiting 1-20 at Benton Road exit. Coatney was observing traffic to his rear through his rear-view mirrors located on the inside and left side of his truck. As he directed his full attention ahead and as he had almost completed his lane-change maneuver, the brake lights suddenly appeared on the vehicle operated by Chretien, who had suddenly braked his vehicle because the Wissman vehicle in front of him suddenly slowed to avoid a collision with the white vehicle which entered the highway from the Barksdale Boulevard exit. The white vehicle, after entering 1-20 from the Barksdale exit, proceeded west and then made a sharp U-turn maneuver and exited 1-20 at the Benton Road exit directly in the path of the three-car line of traffic consisting of Wissman, Chretien, and Coatney. The maneuver of this white vehicle, the identity of which was never discovered, required Wissman to suddenly apply his brakes and Wissman’s sudden slowing maneuver required Chretien to suddenly slow. As the result of Chretien’s sudden slowing action, Coatney applied his brakes and pulled to the right but was unable to avoid colliding with the left rear of the Chretien vehicle. The Chretien vehicle struck the rear of the Wissman vehicle and then spun from the Benton Road exit lane across the Barksdale Boulevard exit lane and into the southernmost through lane where it was then facing west, and at which point it collided head-on with the Parr vehicle. The collision between Chretien and the Parr vehicle caused the Parr vehicle to move into the outside or northernmost through lane where the left rear of the Parr vehicle collided with the right rear of the 18-wheéler which had moved as far as possible to the left and was traveling at that time at least partially on the shoulder area between the dividing rail and the northernmost through lane.
The investigating officer arrived at the scene of the accident within five minutes of being notified of the accident, but was not given a sufficient description of the white vehicle which had entered 1-20 proceeding west from the Barksdale Boulevard exit for him to make any attempt to locate this vehicle and its driver. A sketch which the officer prepared at the time of his investigation of the accident reflected that following the accident the Wissman vehicle was located on the shoulder immediately adjacent to the Benton Road exit lane a short distance west of the exit ramp and behind it on the shoulder was the Santa Maria truck. This sketch showed the 18-wheeler on the shoulder next to the dividing rail with the Chretien and Parr vehicles facing each other head on located at a northeasterly angle across the Barksdale Boulevard exit lane, the southernmost through lane, and partially into the northernmost through lane.
Plaintiff sued Wissman and his insurer, Merculus J. Chretien, Santa Maria Produce Co., Inc. and its insurer, James H. Oehlke and his insurer, and Aetna Casualty & Surety Company, her uninsured motorist carrier.
Defendant Wissman and his insurer third- partied R. C. Coatney, Jr., Santa Maria Produce and their insurer, and Merculus J. Chretien seeking judgment against them for any sums for which they might be held liable on the main demand.
Aetna Casualty & Surety Company third-partied William O. Wissman and his insurer, Santa Maria Produce, its driver, Coatney, and their insurer, James H. Oehlke and his insurer, and Merculus J. Chretien, seeking judgment against them for any sums which it might be held liable to plaintiff. Aetna, as the collision insurer of Nellie Parr, intervened in these proceedings and sued William O. Wissman and his *417 insurer, Santa Maria Produce, its driver, Coatney, and their insurer, James H. Oehlke and his insurer, and Merculus J. Chretien for the property damages it was required to pay Nellie Parr under a collision policy issued by Aetna covering the Parr vehicle.
The Parr case was consolidated for trial with a case styled “Merculus J. Chretien v. Santa Maria Wholesale Produce, Inc., et al.”
The trial court concluded that the sole cause of the accident was the gross negligence of the westbound driver of the unidentified vehicle which had entered the eastbound lanes of 1-20 from the Barksdale Boulevard exit, and for this reason rejected the demands of plaintiff, Nellie Parr, of the intervenor, Aetna Casualty & Surety Co., and of all third-party plaintiffs. The trial court further rejected the demands of Mer-culus J. Chretien contained in the consolidated suit. Only Nellie Parr appealed.
Third-party plaintiff William 0. Wiss-man and his insurer answered the appeal asserting that if the judgment rejecting Nellie Parr’s demands should be reversed and they should be held liable to her, that they should recover on their third -party demands.
Aetna Casualty & Surety Co. answered the appeal asserting only that in the event the judgment appealed from be modified or reversed in favor of Nellie Parr that the judgment rejecting the demands of Aetna, as intervenor and as third-party plaintiff, also be modified in its favor.
Appellant Nellie Parr filed an original and supplemental brief herein, but neither of these briefs contains an assignment of error as required by Rule 9, § 3 of the Uniform Rules of The Courts of Appeal. The briefs contain extensive citations and quotations of statutory and jurisprudential rules of law which generally require a motorist to maintain a proper look-out, maintain control of his vehicle, to operate at a safe speed and to follow preceding vehicles at a safe distance. All or part of the law cited by appellant could be applied to possible contentions of liability on the part of all defendants sued by appellant. We have concluded after a careful review of the briefs filed by appellant wherein the only defendants discussed by name were Coat-ney and Santa Maria that the only assignment of error that can be gleaned from them is directed at the trial court’s conclusion that Coatney was guilty of no negligence in colliding with the rear of the preceding Chretien vehicle. Based upon this assignment of error supplied by us we conclude that the single issue on liability contained in this case is whether or not Coat-ney was guilty of any negligence which brought about the accident sued upon.
Appellant contends that Coatney was traveling at an excessive rate of speed. Coatney testified at the trial, which took place three years after the accident, the he did not know how fact he was driving. The only evidence with regard to Coatney’s speed was given by Nellie Parr and Chretien. Nellie Parr stated that prior to the accident the Santa Maria Produce truck was traveling to her right and was going slightly faster than she, and she estimated her speed between 45-55 mph. Chretien testified that as he traveled down the Benton Road exit lane preparing to exit at the Benton Road ramp, that the car in front of him (Wissman) slowed in a normal manner and that he also slowed in a normal unhurried manner and that he observed the Santa Maria truck approaching him from the rear at a very fast rate of speed. Chretien stated there was no westbound vehicle obstructing their path of travel which created an emergency situation. The trial court concluded that none of the vehicles involved in the collision were exceeding the posted speed of 55 mph.
The officer who investigated this accident stated: “Mr. Wissman had told me that there was an unknown vehicle that was coming up the interstate going west in the eastbound lane going the wrong way toward him and that he turned into Benton Road exit and for that reason he had to apply his brakes suddenly ... to avoid hitting that vehicle.” Wissman did not testify at trial. The statement of Wissman to the police officer was admissible. Stewart v. *418 Herrin Transp. Co., 37 So.2d 30 (La.App. 1st Cir. 1948); DeArmond v. New Amsterdam Cas. Co., 53 So.2d 474 (La.App. 1st Cir. 1951); Hemphill v. Strain, 371 So.2d 1179 (La.App. 1st Cir. 1979). This statement establishes that Wissman saw the car and realizing it created an emergency situation suddenly applied his brakes.
Nellie Parr, her guest passenger, Mrs. McGee, and Louis Parr, her grandson, saw the westbound vehicle. Louis Parr said that he saw it going down the Benton Road exit ramp just as the wrecks were all over. Mrs. McGee was so concerned about the westbound vehicle when she saw it that she ducked her head. .Nellie Parr was very concerned about it. She said “I was holding my wheel. I don’t know what was going to happen.” Oehlke saw it. R. C. Coatney saw it. He testified “At the time all I seen was the car coming across. I seen just a glimpse of something going across the ramp at the time I was trying to keep from hitting the car in front of me.”
Nellie Parr’s testimony that Coatney was going in excess of her speed of from 45-55 mph as they were traveling side- by side does not establish that Coatney was traveling at an excessive rate of speed. The testimony of Chretien that Coatney approached his rear at a high rate of speed as he slowed in a normal manner was not accepted by the trial judge. Chretien’s testimony was contrary to all the witnesses with regard to the existence of the westbound car and contrary to Wissman’s statement that he suddenly braked. Combining these circumstances with the fact that Mer-culus J. Chretien, an uninsured motorist, was a plaintiff in a companion suit against Santa Maria Produce, we cannot conclude that the trial judge who saw and heard him testify was incorrect in rejecting his testimony. Appellant did not establish that Coatney was traveling at an excessive rate of speed.
Plaintiff asserts that Coatney was not maintaining a proper look-out because of Coatney’s testimony that prior to the time he changed from the Barksdale .Boulevard exit lane to the Benton Road exit lane he made an observation in his inside and outside rear view mirror to be certain that he could make this maneuver in safety. This testimony of Coatney contrary to plaintiff’s contention establishes that Coatney was doing exactly what he was required to do— maintain a proper look-out to his rear before changing lanes. Coatney testified that Chretien’s brake lights came on just as he was about to complete the lane-changing maneuver and this does not establish that Chretien had begun his braking efforts before Coatney observed his brake lights. Appellant did not establish that Coatney was not maintaining a proper look-out.
Appellant contends that Coatney was traveling too close behind the Chretien Pontiac, basing this contention upon the testimony of Nellie Parr that she observed the Coatney vehicle traveling 10 feet behind the Chretien vehicle. A careful review of her testimony establishes first, that she does not state in which lane each of the vehicles were traveling when she made the observation upon which she based her estimation of the distance which they were apart. This observation could have been made before Coatney changed lanes and at a time when Coatney was traveling in the Barksdale Boulevard exit lane and Chretien was driving in the Benton Road exit lane. Mrs. Parr testified she did not see the brake lights on the Chretien vehicle. It is just as probable that her observation of the distance between the two vehicles occurred after Chretien applied his brakes in response to Wissman’s sudden stopping maneuver in front of him, as it is that her observation occurred prior to this time, and if it be true that the distance between the following and preceding vehicles had already been reduced by the slowing maneuver of Chretien’s vehicle before she made the observation, the estimation of distance under these circumstances would have no relevance to the contention that Coatney was following too close.
We also note that the testimony of Nellie Parr was established to be unreliable in that she contended the Santa Maria truck, following its collision with the Chretien ve- *419 hide, collided with her right front and that after the collision was over it rested against the right side of her car; whereas, the investigating officer found no damage to the right side of the Parr vehicle and found the Santa Maria truck on the south shoulder of the road following the accident, rather than resting close to the right side of the Parr vehicle which was primarily located in the south through lane and the Barksdale lane following the accident.
Coatney’s testimony that he did not know the distance between him and Chretien at the time the emergency occurred does not establish that he was following too close. For these various reasons, the trial judge’s refusal to find Coatney was following Chretien too closely, based upon Nellie Parr’s testimony, is not manifestly erroneous.
Appellant contends further that Coatney is presumed negligent because he collided with the preceding vehicle and appellant cites numerous decisions in support of this rule of law. This general rule is correct, but it is subject to exceptions which will be hereinafter discussed.
The trial court made the following specific finding with regard to the action of Coat-ney, to-wit:
“Coatney was in the process of a lane change to exit on Benton Road when confronted with the sudden emergency of vehicles stopping in front of him. He braked his vehicle to avoid the collision and reacted as an ordinary prudent man would faced with the sudden emergency which he did not create.”
The evidence does not establish that Coatney was following the preceding vehicle at such a distance that he would not have been able to avoid colliding with it had it slowed or stopped under normal circumstances. The reason for the collision was the sudden and abrupt slowing by Wissman and by Chretien, precipitated by the unknown westbound motorist in the eastbound traffic lanes of 1-20. Because Coat-ney had no reason to anticipate such an occurrence, he was unable to bring his vehicle under control and avoid colliding with Chretien.
In the case of Nomey v. Great American Indemnity Company, 121 So.2d 763 (La.App. 2d Cir. 1960) where a preceding motorist suddenly stopped to avoid striking a dead cat, this court absolved the following motorist of negligence, even though she collided with the rear of the preceding vehicle. The court there reasoned that there were adequate intervals between the vehicles for a following driver to have stopped the vehicle under circumstances which she could have reasonably anticipated.
This court in the decision of Logue v. O’Donley, 190 So.2d 653 (La.App. 2d Cir. 1966), found a following motorist free of negligence who had collided with a preceding vehicle which had suddenly slowed or stopped because of the entry of a truck into the lane of travel of the two vehicles. The court there recognized the provisions of LSA R.S. 32:81 which provides as follows:
“The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.” Id. at 655,
and the general rule that a driver of a following vehicle is required to keep his car under such control as to avoid a collision if the forward car comes to a stop. The court pointed out that this rule is subject to an exception that the following driver may not be negligent where the driver of the lead vehicle creates a hazard by a sudden stop. The court there cited Nomey v. Great American, supra, with approval and referring to the Nomey case said at page 655:
“. . . wherein it was held that a failure to maintain a specified distance between automobiles does not of itself constitute negligence, and that a driver is entitled to rely upon the assumption that an automobile ahead is being driven with care and caution in accordance with the law of the road and that the driver thereof will not commit acts of negligence which will endanger following traffic.”
The court here found that whether the sudden stop was the result of the negli *420 gence of the preceding driver or occurred as the result of the preceding driver’s justifiable attempt to avoid a collision with another who had created an emergency that the following driver was still not necessarily guilty of negligence because of his collision with the sudden slowed or stopped preceding vehicle. The court was here recognizing that a following driver is not required to maintain such a distance between his vehicle and the preceding vehicle that the"' following driver can bring his vehicle to a stop when circumstances occur that the following driver had no reason to anticipate. The court concluded at page 656:
“Mrs. O’Donley was not confronted with any circumstance indicating the necessity of anticipating a grossly negligent act on the part of the driver of the truck in suddenly driving in front of the forward vehicle, requiring its driver to likewise abruptly and drastically reduce its speed or to stop. We find no basis for concluding that Mrs. O’Donley’s acts were not reasonable and prudent.”
The court in Odom v. Texas Farm Products Company, 229 So.2d 118 (La.App. 2d Cir. 1969) correctly applied the sudden emergency doctrine to a following motorist who collided with the rear of a preceding truck. The eastbound truck and following car had been traveling in the outside lane of the two lanes provided for eastbound traffic. The truck driver observed the outside lane was obstructed by a parked vehicle and changed to the inside lane which was suddenly blocked by a vehicle that backed from a private drive. The truck suddenly stopped to avoid a collision with the backing vehicle. The following vehicle observed the parked car in his lane and changed to the inside lane where it collided with the rear of the truck which had suddenly stopped. The court set forth the rule as follows:
“This rule, generally stated, is that, when a motorist is confronted with a sudden emergency or danger, not of his own making and to which he did not contribute, he will not be held responsible for error of judgment committed by him in the emergency, provided he exercises ordinary, prudent, and reasonable care under the circumstances.” Id. at 123.
The court there excused the truck driver of any negligence in suddenly stopping his vehicle because of the sudden emergency created by the backing vehicle entering his path. The court said the same rule was applicable to the following motorist. The court found that when the truck stopped this created a sudden emergency for the following driver who had changed the course of his car to avoid the parked car. The court found that the following driver had little or no opportunity to take any evasive action when he followed the lane change maneuver of the preceding truck upon observing the parked vehicle in his lane of travel and was then faced with the sudden stop made by the truck when the car backed in front of it.
The court there stated with reference to the following driver:
“His efforts to avert an impending disaster were those of a reasonable and prudent motorist. It can hardly be said, under the circumstances, that he had a choice of means to avoid the accident. If error was committed, he is excused from its effects by the sudden emergency which confronted him.” Id. at 124.
In the case of Ashford v. Richards, 228 So.2d 530 (La.App. 1st Cir. 1969), a southbound motorist was required to suddenly brake his vehicle when a passing unidentified motorist cut sharply in front of him and slowed his vehicle. At the time this occurred a northbound motorist was approaching. The southbound motorist was required to brake so forceably to avoid colliding with the passing motorist that he lost control of his car and entered the northbound lane and collided with the approaching northbound motorist. The court excused the southbound motorist of any negligence based upon the sudden emergency doctrine. It found the accident was solely due to the negligent passing maneuver of the unidentified motorist. The court stated the applicable rule to be:
“It is settled law that a motorist confronted with a sudden emergency not of *421 his own creation is not held to the same accuracy of judgment or degree of care as in ordinary circumstances. He is not necessarily negligent in making a mistake of judgment or failing to exercise the best or wisest course for avoiding an accident or injury. Neither is he liable for injury if he exercises such care as is reasonably to be expected of an ordinarily prudent individual under similar facts and circumstances. Smith v. Marquette Casualty Company, 247 La. 1054, 176 So.2d 133.” Id. at 533.
The trial court here necessarily found that Coatney by applying his brakes and pulling to the right had exercised “such care as is reasonably to be expected of an ordinarily prudent individual under similar facts and circumstances.”
The scope of our review has been clearly set forth as follows in the often cited case of Canter v. Koehring Company, 283 So.2d 716 (La.1973), at p. 724:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.”
While there is no evidence in the record to establish the speed of Coatney nor the distance he was behind Chretien as he accomplished the lane change maneuver, the other circumstances that were conclusively established, and the “reasonable inferences” from these established facts provide substantial evidence to support the trial judge’s finding that Coatney was not legally responsible for colliding with the rear of Chretien’s vehicle and that the sole cause of the accident was the negligence of the unidentified motorist in traveling west in the eastbound lanes of 1-20.
AFFIRMED at appellant’s cost.