512 So.2d 1225 (1987)
Donald JOHNSON
v.
Alfred E. PEPPERMAN, Diane Pepperman and Allstate Insurance Company.
No. 87-CA-176.
Court of Appeal of Louisiana, Fifth Circuit.
August 26, 1987.
Law Offices of Eugene Barriffe, Jr., Eugene Barriffe, Jr., New Orleans, for Donald Johnson, plaintiff-appellant.
Law Offices of Richard E. Britson, Jr., Kevin P. Lohan, New Orleans, for Diane Pepperman and Allstate Ins. Co., defendants-appellees.
CHEHARDY, C.J., and KLIEBERT and GRISBAUM, JJ.
CHEHARDY, Chief Judge.
This appeal by plaintiff, Donald Johnson, arises from a jury award for personal injury damages rendered against defendants, Alfred Pepperman, Diane Pepperman and Allstate Insurance Company. The sole issue presented in the appeal is whether the jury award was so low as to constitute an abuse of discretion.
The accident in this case occurred on June 13, 1984 when plaintiff was traveling south on Clearview Parkway in Metairie, Louisiana. At the intersection of Clearview Parkway and Yale Street, plaintiff's vehicle was struck by a vehicle driven by defendant Diane Pepperman as she entered Clearview Parkway from the intersecting street.
As a result of the accident, plaintiff filed suit against defendants claiming damages to his neck, shoulder and left elbow. After a two-day trial, the jury returned a verdict in plaintiff's favor and awarded damages in the total amount of $1,500.
*1226 On appeal, plaintiff alleges the award was an abuse of discretion in that the medical evidence shows he sustained a three-month injury to his cervical spine and a permanent injury to the ulnar nerve of his left elbow. Plaintiff contends the elbow injury, diagnosed as "tennis elbow," flares up with repetitive movement and, because of that fact, he suffered a loss of earning capacity since his occupation as a sandblaster and painter require arm movements which provoke the symptoms. Considering these facts, plaintiff concludes the jury abused its discretion in awarding only $1,500 as compensation for his damages.
The facts show that plaintiff sought medical treatment on the day following the accident at the Canal Industrial Medical Center. At that time his chief complaint was stiffness in his neck and shoulders. The initial examination revealed restricted neck motion and spasms which the examining physician diagnosed as cervical myositis (muscular inflammation). Medication and heat therapy were prescribed. As a result, plaintiff embarked on a series of heat treatments performed by the medical center's physical therapist three times a week. As his condition improved, the frequency of the therapy treatments was reduced accordingly. By the end of September, 1984, plaintiff was relieved of his cervical discomfort.
Dr. Philip Jones, one of plaintiff's treating physicians at the medical center, testified from the medical records of the center in regard to plaintiff's elbow. He stated he personally saw plaintiff on only one occasion in August, 1984, but that the medical records showed plaintiff first complained of pain relating to his arm on September 13, 1984. The diagnosis at that time was an injury to plaintiff's ulnar nerve, and plaintiff was referred to an orthopedic surgeon.
Plaintiff thereafter went to Dr. Raymond Kitziger, an orthopedic surgeon who had treated him in 1978 for a shoulder injury. During the examination on October 4,1984, plaintiff gave a history in which he informed Dr. Kitziger that he injured the affected elbow in an automobile accident four months previously. He told the doctor he had been unemployed during that time and that the pain began after he started working in September, 1984. Dr. Kitziger diagnosed the injury as "tennis elbow," a condition involving irritation and inflammation of the ulnar nerve. The doctor stated the condition can be caused by a single trauma, or by any repetitive movement. Dr. Kitziger treated plaintiff with cortisone and later prescribed anti-inflammatory drugs and a forearm strap. Four weeks following his first visit, plaintiff was discharged. However, on February 7, 1986 plaintiff returned with the identical complaint. At that time plaintiff told the doctor the onset of the symptoms occurred after he lifted Sheetrock. The doctor indicated to the court that such a "flare-up" was not unusual depending upon the patient's use of the affected arm. In plaintiff's case, he believed it could have resulted from plaintiff's use of his arm in his work.
Plaintiff testified that the impact of the accident "threw" him around, although he had his seat belt buckled. He stated his elbow struck the inside of the door causing a sharp transient pain. He explained he did not seek treatment for the elbow when he first went to the medical center because his elbow discomfort was minor.
Plaintiff also testified that prior to the accident his regular occupation was a sandblaster/painter, but when the accident occurred, he had been temporarily working as a part-time carpenter's helper. After the collision, plaintiff stated he became unemployed. He remained unemployed until September 1984, at which time his neck discomfort was minimal and he started working again as a sandblaster/painter. He testified that upon resuming his occupation he began experiencing pain in the left elbow, and further stated he had no problems with his elbow prior to the accident.
Plaintiff remained employed for six months. However, he stated the work caused him difficulty because of the elbow pain. He explained that sandblasting requires repetitive motion and strength in both arms to hold the hose, which was problematic due to the discomfort in his arm. He further testified he used a grinding *1227 machine and paint sprayer in his work, which also caused pain in the elbow. After six months plaintiff stated he was "laid off," but felt he would have obtained another job with the company absent the difficulty he experienced working with his arm. After that, he stated he was unable to find another job utilizing his skills because he was forced to wear a forearm strap which indicated to at least one job foreman that he would be unable to perform the job adequately. Because of his difficulties, plaintiff's father helped him obtain employment as a porter and he, his wife and two children moved into his father's home for economic reasons. He testified he still experiences intermittent pain since his porter job consists of sweeping, vacuuming and hauling large bags of trash.
On cross-examination, counsel for defendant questioned plaintiff about his activities between the date of the accident and the first severe onset of the elbow pain. Plaintiff admitted he began an exercise program following the accident. He stated he lost 40 pounds during that three-month period by jogging and performing push-ups in sets of 15 or 20.
In reviewing damage awards, the appellate standard of review is whether the trier of fact abused its discretion. Reck v. Stevens, 373 So.2d 498 (La.1979); Gravois v. Succession of Trauth, 498 So.2d 140 (La.App. 5 Cir.1986). To determine whether a jury abused its discretion in making the award the court must closely examine the particular facts of the case before it, since no two cases are fully alike. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Reck v. Stevens, supra; Rutherford v. Jenkins, 449 So.2d 701 (La.App. 5 Cir.1984). Where it has been determined that the trial court abused its discretion, the award can only be raised (or lowered) to the lowest (or highest) point which is reasonably within the discretion of the trial court. Coco v. Winston Industries, Inc., supra.
The evidence regarding plaintiff's elbow injury indicates he suffered a permanent injury. However, unlike the cervical myositis, for which the evidence of causation was straightforward and clear, the evidence as to the cause of his "tennis elbow" is uncertain. While plaintiff testified he injured the elbow in the accident, it was not reported on the medical records until three months later. In addition, plaintiff admitted to engaging in vigorous physical exercises, in particular push-ups, which require repetitive movements of the arms. Although the plaintiff's injury could have resulted from the accident, the medical testimony indicated any repetitive movements could also cause that type of inflammation. In light of these facts and the amount of the trial court award, it appears the jury did not include compensation for the elbow, presumably because plaintiff was unable to prove causation by a preponderance of the evidence. After our review, we find no manifest error in this regard. Arceneaux v. Dominque, 365 So.2d 1330 (La.1978).
Finally, plaintiff alleges the award for the neck injury was an abuse of discretion even without considering the elbow injury. The evidence in this regard shows plaintiff sustained a three-month injury to his neck that was clearly caused by the collision. The medical expenses incurred for treatment of the injury totaled $739.13, accounting for almost half of the jury award. The remaining $760.87 is thus attributable to plaintiff's pain and suffering and the inconvenience of numerous visits to the physical therapist. We find this amount to be so low as to constitute an abuse of discretion. After reviewing the particular facts and circumstances of this case, we conclude the lowest reasonable amount the evidence will justify is $2,500 plus plaintiff's medical expenses.
Accordingly, the judgment of the trial court is hereby amended to increase the award to $2,500 for general damages plus $760.87 for plaintiff's medical expenses. The judgment is affirmed in all other respects. Costs of this appeal are to be paid by defendants.
AMENDED AND AS AMENDED, AFFIRMED.