CRAIN, Judge.
Thomas Bettis allegedly suffered personal injuries as the result of an accident which occurred at the boarding house in which Bettis resided. Oscar Price, the owner of the building, leased the building to Eugene Barnes who operated it as a boarding house. Barnes rented a room to Bettis. Bettis instituted this personal injury action against Price and Price’s insurer, Great Southwest Fire Insurance Company. After trial by jury judgment was rendered in favor of plaintiff and against defendants. Plaintiff was awarded damages in the sum of $3,000. Ten per cent fault was attributed to defendants and 90% fault was attributed to plaintiff. From this judgment Bettis appeals alleging as error the trial court’s failure to cite to the jury La.C.C. arts. 2322 and 2695; the trial court’s failure to give jury instructions regarding special damages; and quantum.
FAILURE TO GIVE REQUESTED JURY INSTRUCTIONS
In the first and second assignments of error plaintiff alleges that the trial court erred in submitting the case to the jury without citing La.C.C. art. 2695 relating to the liability of a lessor for damages due to vices and defects of the thing leased and La.C.C. art. 2322 relating to the liability of an owner of a building for damage caused by its ruin or a vice or defect in its original construction.
If plaintiff did submit jury instructions to the trial court regarding the citing of articles 2695 and 2322 those requested instructions are not a part of this record. Plaintiff concedes in brief that he did not object to the trial court’s failure to cite the articles to the jury. Nor does plaintiff allege that in charging the jury the trial court misstated the law. A specific objection and the grounds thereto must be made in order for a party to assign as error the giving or failing to give an instruction. La.C.C.P. art. 1793(C); Schoonmaker v. Capital Towing Co., 512 So.2d 480 (La.App. 1st Cir.), writ denied, 514 So.2d 458 (La.1987). Accordingly, these assignments of error are without merit. In the first assignment of error plaintiff also contends that the jury erred in finding fault on the part of plaintiff. This contention will be addressed infra.
INADEQUATE JURY INSTRUCTIONS
In the third assignment of error plaintiff contends that the trial court failed to adequately instruct the jury regarding the amount of special damages in the form of medical expenses incurred by plaintiff.
The trial judge has the discretion to use the language he deems appropriate to convey to the jury a clear and correct understanding of the applicable law. Schoonmaker, 512 So.2d at 485.
In reference to damages the trial judge instructed the jury:
We fully realize the difficulty of translating personal injuries into dollars and cents figures. That’s the only thing we’ve got to work with, so that’s what you must do. You must arrive at a figure that will fairly and adequately compensate the plaintiff for the damages he has already suffered and that he will in all likelihood suffer in the future. In estimating damages you can take into consideration, among other things, the following: physical injuries suffered; pain and suffering, both physical and mental; permanent, disability, if any; loss of earnings, if any; medical expenses, both past and future, if any.
[[Image here]]
We find no error in the trial court’s instructions regarding damages.
QUANTUM
In the third assignment of error, plaintiff contends that the damages awarded by the jury was an abuse of discretion. Plaintiff’s medical expenses as stipulated *525 at trial were $1,377.20. Thus of the $3000 awarded to plaintiff, $1,622.80 is attributable to general damages.
Plaintiff had been examined and treated for dizziness at the Emergency Department at Earl K. Long Medical Center on July 25, 1983. The injury allegedly occurred on August 3, 1983. Plaintiff was treated in the Emergency Department at Earl K. Long Medical Center on that date for dizziness and headache allegedly associated with the accident. The physical examination revealed a small bump on top of the head. He was followed as an out-patient in the Earl K. Long Medical Center Neurology Clinic (Neurology Clinic) for complaints of headaches and dizziness. On November 17, 1983, the Neurology Clinic records indicate that plaintiff “has been getting better now only complaint is that on few occasions he will lose his balance.” Plaintiff was discharged from the Neurology Clinic on February 16, 1984. During his course of treatment at the Neurology Clinic plaintiff was not prescribed any medication for pain; he took only over the counter medication when needed.
Plaintiff was examined by Dr. Charles Kennon on February 15, 1985, at the request of his attorney. Bettis complained of pain in the right and left posterior neck area, headaches, loss of balance, dizziness and memory lapses. He was on no prescription medication at that time. A physical examination revealed no muscle spasm and almost complete range of motion. An x-ray of the cervical spine revealed arthritic changes with disc degeneration which, in Dr. Kennon’s opinion, pre-date the August 3, 1983, accident. Plaintiff related that he had never experienced neck pain or headaches prior to the accident. Based on the • medical history as related to Dr. Kennon by plaintiff, in Dr. Kennon’s opinion, plaintiff had suffered a chronic cervical sprain and/or strain. Plaintiff’s complaints of balance problems and memory lapses could not be attributed to objective orthopedic findings. Plaintiff was thus referred to a neurologist for evaluation.
The parties stipulated that plaintiff has no symptoms requiring neurological treatment. Plaintiff was examined by Dr. Robert E. Hanchey, neurosurgeon, on August 5, 1985, at the request of defendants. Dr. Hanchey testified by deposition that the physical examination revealed no muscle spasm, no restriction of cervical range of motion, normal reflexes in the upper and lower extremities, and a slight decrease in pinprick sensation in the ulnar distribution (the ring and long fingers of both hands). Dr. Hanchey noted that plaintiff moved easily during the initial interview and more slowly and deliberately during the actual physical examination of the cervical area, leading Dr. Hanchey to conclude that plaintiff was attempting to “overdramatize” his condition. Dr. Hanchey reviewed x-rays of the cervical spine which were taken August 23, 1983. In his opinion the cervical spine films revealed extensive degenerative osteoarthritis at multiple levels with nerve root canal narrowing at C-7, C-5 and 6 and these degenerative changes were not caused by the accident. He could find no objective evidence substantiating significant on-going muscular or cervical disorder which would account for plaintiff’s discomfort and headaches. He further stated that plaintiff’s alleged memory lapse appeared “convenient” because plaintiff “had little difficulty remembering fairly well the names and dates of certain physicians he saw.”
A damage award should not be disturbed unless the trier of fact abused its discretion. Johnson v. Pepperman, 512 So.2d 1225 (La.App. 5th Cir.1987). After careful review of the record we conclude that the jury did not abuse its discretion in awarding damages in the sum of $3000.
PLAINTIFF FAULT
In the first assignment of error plaintiff contends that the jury erred in determining plaintiff’s fault contributed to his injuries. Plaintiff does not contend that comparative fault is not applicable under theories of negligence or strict liability.
Contributory negligence is a factual determination which should not be disturbed ■unless clearly wrong. Soileau v. South *526 Central Bell Telephone Co., 406 So.2d 182 (La.1981).
“The standard of conduct to which a plaintiff must conform for his own protection is that of a reasonable man under like circumstances.” Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720, 722 (La.App. 1st Cir.1983).
It was uncontested that Price was aware that the sheetrock ceiling leaked. Prior to the accident Barnes told plaintiff that he was contacting Price regarding the ceiling. Barnes testified that plaintiff replied, “You don’t need to call him.... Let it fall on me_ I’ll sue him_ I’ll sue the so and so out of him.” Barnes and Price testified that Bettis was offered another room prior to the accident but Bettis refused the offer.
Bettis testified that it had been raining for several days prior to the accident; he knew the ceiling was wet and bulging; he knew it was going to fall; and he had been aware of those conditions for a “pretty good while”. Bettis denied being offered an alternative room or being told to vacate the premises by either Barnes or Price until after the accident.
Based on a review of the record the jury’s determination that plaintiff’s conduct under the circumstances constituted fault was not clearly wrong.
APPORTIONMENT OF FAULT
In the third assignment of error plaintiff apparently complains of the jury’s apportionment of 90% fault to plaintiff and ten percent fault to defendants. The apportionment of fault by the trier of fact is a factual determination which will not be disturbed on appeal unless clearly wrong. Vamado v. Continental Insurance Co., 446 So.2d 1343 (La.App. 1st Cir.1984). Among the factors to be considered in assigning percentages of fault are:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La.1985).
The jury obviously heard and observed the testimony of the witnesses in arriving at the factual determination that plaintiff was 90% at fault. After reviewing the record and after taking into consideration the factors enunciated in Watson, 469 So. 2d at 974, we find the jury’s determination is not clearly wrong. Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed against plaintiff.
AFFIRMED.